THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JANE ODENWELLER, Also Known as JANE MILLER, Appellant.

Third Department, April 14, 1988

**APPEARANCES OF COUNSEL**

*Waite, Berry & Reiter (Stanley B. Reiter* of counsel), for appellant.

*Gerald F. Mollen, District Attorney (Marjorie M. Lyons* of counsel), for respondent.

## OPINION OF THE COURT

HARVEY, J.

At approximately 5:30 P.M. on July 28, 1986, defendant was seen driving a car in a very erratic manner. Two witnesses, Caryn Ely and Tammy Brick, observed defendant's erratic driving and watched as she nearly hit some bicyclists. Ely and Brick followed defendant into a bar parking lot. Believing that defendant was intent on consuming alcoholic beverages at the tavern, Ely and Brick approached her, detecting a strong odor of alcohol. When Ely and Brick attempted to speak to defendant, she reacted belligerently. Ely and Brick informed defendant that they were going to call the police. Defendant then backed the car she was driving into a parked vehicle and left the scene.

The witnesses immediately called the State Police and Trooper Susan Andrews arrived at the scene within a matter of minutes. After receiving a description of defendant's actions and being provided with the license plate number of the car defendant was operating, Andrews proceeded directly to defendant's address. Upon arrival at defendant's residence, Andrews spoke with defendant's 14-year-old grandson, Jason Hoitinga, who was outside the residence and had been with defendant during the afternoon. Andrews testified that Hoitinga informed her that defendant had been drinking heavily, that he had been with her when she nearly hit the bicyclists and when she ran into the parked vehicle.

When Andrews asked Hoitinga where defendant was, he proceeded up an outside stairway. Andrews followed him. At the top of the stairs, he opened a door and spoke to defendant, who was in the room into which the outside door opened. At that point, Andrews stepped through the open door into the room and spoke to defendant. Defendant reacted by shouting at Andrews and attempting to physically attack her. A struggle ensued and the two women ended up outside on the landing at the top of the stairs. Andrews was subsequently aided and defendant was arrested. Defendant consented to a blood alcohol test, the results of which indicated that her blood alcohol level was .22%.

Defendant, who had been convicted less than a year earlier of driving while intoxicated, was charged with, *inter alia,*

driving while intoxicated as a felony and operating a motor vehicle while she had .10% or more by weight of alcohol in her blood as a felony. Prior to trial, defendant moved to suppress the result of the blood alcohol test upon the ground that it was the fruit of an unlawful arrest. The motion was denied and, following a jury trial, defendant was convicted of the aforementioned felonies as well as reckless driving. Defendant was sentenced to five years' probation and had her driving privileges in New York revoked. This appeal ensued.

Defendant contends that Andrews' warrantless entry into her residence and the ensuing arrest violated her 4th Amendment right to be free from unreasonable searches and seizures. In the absence of probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the 4th Amendment *(Payton v New York,* 445 US 573).[1] It is clear that probable cause to believe that a crime had been committed existed. Andrews had been informed by two witnesses of defendant's erratic and dangerous driving. These witnesses had spoken to defendant and had observed her belligerent manner, noticed her slurred speech and detected a strong odor of alcohol. They, together with others, had seen defendant back into a parked vehicle and leave the scene without checking whether damage had occurred. Andrews had also spoken with defendant's grandson, who was with defendant throughout the afternoon, and had been informed that defendant had been drinking heavily and had driven in the aforementioned manner.

Exigent circumstances may be found where relevant evidence is likely to be destroyed *(see, People v Vaccaro,* 39 NY2d 468, 472; *People v Henderson,* 107 AD2d 469, 471). Here, there is little doubt that delay would have seriously impaired important evidence *(see, Matter of Stark v New York State Dept. of Motor Vehicles,* 104 AD2d 194, 197, *affd* 65 NY2d 720). In order to get an accurate reading of defendant's blood alcohol level, it was essential that the test be administered as nearly as possible to the time she was operating the vehicle *(cf., Vehicle and Traffic Law § 1194 [1] [requiring that tests be administered within two hours of arrest]).* With the passage of time the body's natural processes were destroying the evidence of defendant's blood alcohol level. Further, once defen-

---

1. We note that County Court found the evidence insufficient to establish beyond a reasonable doubt that Andrews had been given consent to enter defendant's residence.

dant had entered her residence she could have consumed additional alcohol, thus making the result of any subsequent test of dubious validity *(see, Matter of Stark v New York State Dept. of Motor Vehicles, supra,* at 197).

A further factor in the exigent circumstances formula is the gravity of the underlying offense *(Welsh v Wisconsin,* 466 US 740). In *Welsh v Wisconsin (supra),* a case with similar facts to the one at bar, the United States Supreme Court found that an arrest in an individual's home was unlawful. Significant in the court's analysis was the fact that Wisconsin classified driving while intoxicated as merely a violation, with a maximum fine of $200 *(supra,* at 746). This State has taken a much more serious view of driving while intoxicated. A first offense is a misdemeanor punishable by up to one year in jail and a $500 fine (Vehicle and Traffic Law § 1192 [5]).[2] Further, the courts of this State have repeatedly referred to the strong interest this State has in removing intoxicated drivers from its highways *(see, e.g., People v Scott,* 63 NY2d 518, 525; *Matter of Quealy v Passidomo,* 124 AD2d 955, 956-957, *lv denied* 69 NY2d 612; *Matter of Stark v New York State Dept. of Motor Vehicles, supra).*

The fact that important evidence was being lost and that this State has a strong interest in removing intoxicated drivers from its highways are not, by themselves, sufficient reason to justify this warrantless arrest. We emphasize that in cases such as this the court must, as County Court did, carefully scrutinize the specific facts and circumstances *(see, United States v Martinez-Gonzalez,* 686 F2d 93, 100; *see also, Matter of Stark v New York State Dept. of Motor Vehicles, supra,* at 198 [Mahoney, P. J., dissenting]). There is no per se rule authorizing warrantless arrests of suspected intoxicated drivers in their homes. Here, all the following factors, viewed cumulatively, are significant. Andrews' entry into defendant's residence was made during daylight hours *(see, United States v Campbell,* 581 F2d 22, 26, n 5; *see generally,* 5 Zett, NY Crim Prac ¶ 36.1). The manner of the entry was peaceful *(see, Matter of Stark v New York State Dept. of Motor Vehicles, supra; see also, United States v Reed,* 572 F2d 412, 424, *cert denied sub nom. Goldsmith v United States,* 439 US 913). Andrews merely stepped through a door which had been

---

2. While a second offense constitutes a felony (Vehicle and Traffic Law § 1192), this cannot be considered in the absence of evidence that the arresting officer was aware that the suspect had a previous driving while intoxicated conviction *(see, Welsh v Wisconsin,* 466 US 740, 746, n 6).

opened by defendant's grandson, who was temporarily residing at the premises and who knew that Andrews was seeking to speak to defendant. Andrews was immediately confronted by defendant as she took a step into the residence; she did not wander throughout the house seeking defendant. It is also significant that, as previously discussed, there was strong evidence that the crime of driving while intoxicated, as well as other crimes, had been committed *(see, Dorman v United States,* 435 F2d 385, 392-393). Further, Andrews' pursuit, while unable to fit within the legal definition of "hot pursuit" *(see, Welsh v Wisconsin, supra,* at 753), was nevertheless, as noted by County Court, at least "luke warm". It covered in a matter of minutes a direct line from the eyewitnesses to the vehicle's passenger to defendant. If Andrews had left defendant's residence in order to obtain a warrant, a situation would have existed whereby defendant could have entered her car, yet another time creating a grave danger to the public. All these factors, together with the seriousness of the crime and the loss of evidence which was occurring, lead to the conclusion that County Court's decision not to suppress the result of the blood alcohol test was correct.

MERCURE, J. (dissenting). I respectfully dissent. Although I agree with the majority that, given this State's strong interest in protecting the public and in preventing the tragic consequences of drunk driving, a warrantless home arrest of an intoxicated driver may be made when exigent circumstances exist,[1] I disagree that such circumstances are present here.

Initially, the arrest cannot be justified by Trooper Susan Andrews' "hot pursuit" of defendant *(compare, United States v Santana,* 427 US 38, *with Welsh v Wisconsin,* 466 US 740; *see also, Matter of Stark v New York State Dept. of Motor Vehicles,* 104 AD2d 194), as it is clear that there was no pursuit at all. Defendant drove away from the bar parking lot before the witnesses called the police. Andrews testified that she arrived on the scene approximately 10 minutes after she received the

---

1. An effort to harmonize *Matter of Stark v New York State Dept. of Motor Vehicles* (104 AD2d 194, *affd* 65 NY2d 720) with *Welsh v Wisconsin* (466 US 740) would seem to require a finding that a warrantless in-home arrest for driving while intoxicated cannot be justified in the absence of close and uninterrupted police pursuit, but that issue need not be determined in light of the fact that there was neither hot pursuit nor any other exigent circumstance to justify the arrest here. The majority would expand the holding in *Stark* by eliminating the requirement of uninterrupted pursuit. Such an expansion is, in my view, constitutionally impermissible.

radio transmission advising her of the incident and that she remained at the bar for approximately five minutes interviewing the witnesses. Consequently, at the time that Andrews prepared to commence her "pursuit", defendant had been gone for a minimum of 15 minutes and Andrews was aware of neither her identity nor her whereabouts. To be in hot pursuit means that some sort of a chase is taking place *(United States v Santana, supra,* at 43). Andrews knew only the year, make and model of the subject vehicle, that it was registered to Erwin Odenweller of Route 7, Sanitaria Springs, New York, and that it had been driven by an older woman and occupied by a young boy. In proceeding to the Odenweller residence, she was performing a purely investigative function. It was not until her fortuitous encounter with defendant's grandson that she was able to connect defendant with the incident. The information imparted by Jason Hoitinga provided Andrews, for the first time, with reasonable cause to believe that defendant was the driver of the vehicle, that she was intoxicated and that she was in the house.

There were no other exigent circumstances justifying the warrantless arrest. Andrews testified that it took her 10 minutes to get from the bar to defendant's house. Allowing an additional 5 minutes for the conversation with Hoitinga, it can be seen that defendant had been home for a minimum of 15 to 20 minutes[2] when Andrews decided to effect the warrantless arrest. This would have already given defendant a more than adequate opportunity to consume additional alcohol, had she been so inclined, so the warrantless arrest could not be justified on that basis. I also disagree with the majority that the arrest was necessary because defendant's body was breaking down the alcohol and thus destroying evidence. Clearly, the body does eliminate alcohol over a period of time. However, the rate of elimination is fairly predictable and not of such a magnitude that a reasonable delay would unduly jeopardize the criminal prosecution. The alcohol elimination rate, although varying among individuals, is most frequently reported as 15 mg of alcohol eliminated per 100 ml of blood per hour, or .015% gram/hour *(see,* Nichols, Drinking/Driving Lit § 23:24, at 23-46—23-47). Only 30 minutes elapsed from the time that Caryn Ely and Tammy Brick witnessed defendant's offenses until Andrews obtained probable cause to arrest.

---

2. It was Hoitinga's testimony that he and defendant had been home for 45 minutes when Andrews arrived.

Vehicle and Traffic Law § 1194 (1) permits administration of a chemical test within two hours following arrest or a positive screening test, thereby manifesting legislative approval of at least a two-hour delay between vehicular operation and testing. Further, tests taken more than two hours following the time of the drunk driving offense (as opposed to the arrest therefor) have repeatedly been upheld by the courts *(see, e.g., People v McPherson,* 61 NY2d 945 [approximately three hours]; *People v Crocker,* 125 AD2d 132 [over 2½ hours]; *People v Spink,* 97 AD2d 963 [approximately 2½ hours]). There is no indication in the record that the police could not have obtained a warrant within a reasonable period of time, as no such effort was made.

Nor was there a threat that Andrews' departure to obtain a warrant would have permitted defendant to leave her home and further endanger the public. Andrews could easily have radioed for a backup patrol car to watch the house and, at the same time, requested that a local Judge be alerted to her need for a warrant. In the event that defendant attempted to leave the house, she could have been arrested, since a warrantless arrest outside of her house and in a public place would have been permissible *(see, United States v Santana, supra,* at 42).

Accordingly, I would reverse the judgment of conviction, grant defendant's motion to suppress and remit the matter to County Court for further proceedings.

CASEY, J. P., and YESAWICH, JR., J., concur with HARVEY, J.; MERCURE, J., dissents and votes to reverse in an opinion.

Judgment affirmed.