THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
BILLY J. LAGLE, Defendant-Appellee.

Fifth District    No. 5—89—0171

Opinion filed July 10, 1990.

Barry Vaughan, State's Attorney, of Fairfield (Kenneth R. Boyle, Stephen E. Norris, and Garry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Janet L. Gandy, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The People of the State of Illinois appeal from an order entered March 1, 1989, by the circuit court of Wayne County granting the motions of defendant, Billy J. Lagle, to quash his arrest and suppress evidence obtained as a result of that arrest, and to suppress certain statements taken from him in violation of his *Miranda* rights. Defendant had been charged with the offenses of speeding and driving under the influence of alcohol.

At the hearing on defendant's motions, the following evidence was adduced. Billy J. Lagle testified that in the early morning of October 23, 1988, he was traveling to his house from the nearby community of Flora. He had left Flora at approximately midnight and it takes him 15 to 20 minutes to get home. As he approached his house, he saw a car parked on the side of the road approximately three utility poles from his house. He noticed only that it was white. Defendant estimated that his speed was between 55 and 60 miles per hour.

About the time defendant saw the car, he began to slow down to pull into his driveway. Defendant turned on his turn signal, turned into his drive, took his seat belt off, stopped and exited the truck and proceeded into his house. He went through his back door onto his porch, went up three steps, turned left and opened the door to his kitchen. Defendant walked into the kitchen, shut the kitchen door and began to walk into his front room. Defendant's wife asked him who had followed him into the driveway. Defendant approached the kitchen window to look out when he heard a loud "boom." The kitchen door

flew open and State Police officer Goodman was standing in the door-way with one hand on his gun, pointing his finger and yelling at defendant. Trooper Goodman did not knock before entering the house and opened the door to the porch so hard that the door knob made a hole in the dry wall. Defendant's children were awakened and began crying. Defendant thought that, at the most, four to five minutes had elapsed from the time he first saw the white car on the road and the time Trooper Goodman entered his house.

Defendant testified that he had not seen anyone following him, did not see any flashing lights behind him, and did not hurry or rush to get into his house. Trooper Goodman did not have any kind of a warrant. Defendant agreed to go outside with Goodman to talk. Defendant was told to sit in the front seat of Goodman's car. Defendant was told he was being arrested for speeding and driving under the influence of alcohol. Defendant was not advised of his *Miranda* rights at this time; however, on the way to the police station, Trooper Goodman did question defendant about his drinking. Defendant was not advised of his *Miranda* rights until after he had been administered a breathalyzer test and had been thoroughly questioned by Trooper Goodman. This was approximately 1½ hours after defendant had been arrested at his home. The breathalyzer indicated that defendant's alcohol concentration in his breath was .12, over the legal limit for driving. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(1).) Defendant had told Trooper Goodman that he had had three to five alcoholic beverages that evening.

Sheila Lagle, defendant's wife, testified that at approximately 12:45 a.m. on October 23, 1988, her husband returned home. Defendant had entered the kitchen in a normal manner. He walked in and did not appear to be in a hurry. After he had entered the kitchen, Sheila asked her husband who was in the driveway. Suddenly, the porch door was opened, the kitchen door was opened and a police officer was standing in the doorway. The police officer was screaming at defendant that he was under arrest. One hand was on the officer's gun and the officer was shaking the other hand at defendant. The opening of the porch door knocked a hole in the wall. The officer did not knock before entering. Defendant agreed to go outside with the officer.

State Trooper Phillip Goodman testified that at approximately midnight on October 23, 1988, he was on routine traffic patrol. He observed a Ford pickup truck, which appeared to be speeding, south-bound on the roadway. Goodman's radar clocked the vehicle at 68 miles per hour, well over the legal speed limit. Goodman activated his

red and blue flashing lights on the front of the vehicle. He was sure they were working because he could see them flashing. Goodman was facing north, toward the vehicle which was proceeding south. Goodman turned on his parking lights and headlights and then activated his wig-wag headlights, which alternate the bright lights on either side of the vehicle. Defendant did not stop, although Goodman's lights were activated before defendant got to his location. Goodman started his car, and as defendant passed him, Goodman turned around and began to follow. Approximately one-half mile down the road, defendant turned into a driveway. Goodman followed into the drive approximately 12 car lengths behind. Goodman began his radio procedures for a vehicle stop. He observed defendant exit the truck and begin trying to run toward the back of the house. Goodman exited his vehicle and yelled as loudly as he could for defendant to stop, that he was a State Police officer. Defendant did not stop, but continued trying to run toward the back of the house. Defendant was staggering and having quite a bit of trouble getting across the ground. Goodman chased defendant through the back door, up the kitchen steps and caught him at about the time he was entering the kitchen. Goodman was 30 to 40 feet behind defendant when he started for the house. Defendant had trouble traversing the steps and appeared to be intoxicated. When Goodman first caught up with defendant, defendant yelled that Goodman could not chase him into his house. Goodman could smell the very strong odor of alcohol on defendant's breath. Defendant eventually agreed to go outside and sit in the squad car.

Goodman administered defendant a field sobriety test, which he failed. Defendant was placed under arrest for driving under the influence of alcohol. Goodman did not obtain a warrant before entering defendant's house because he was in pursuit, he suspected defendant was intoxicated and he was afraid that in the time it took to obtain a warrant, defendant's blood-alcohol level would drop below the legal limit.

On cross-examination, Goodman testified that his vehicle was parked slightly less than one-half mile from defendant's residence. It takes approximately 30 seconds to travel one-half mile at 60 miles per hour. Goodman thought no more than two minutes elapsed from the time defendant passed his vehicle until the time Goodman caught up with him on the porch. Defendant appeared to be in a hurry to get into his house. It was approximately 40 to 50 feet from where defendant's truck was parked in the driveway to the back door of the house.

Defendant testified in rebuttal that he did not see any police lights that evening, he did not see a police car following him, nor did

he see any other kind of car following him. He walked into his house in a normal, unhurried gait. He was not staggering. He did not see any car in his driveway. He did not hear anyone yell at him to stop in his driveway.

Before the trial court, defendant argued that even if this were a case of "hot pursuit," a warrantless entry into a home is not justified for a minor offense such as speeding, and the officer did not have probable cause to believe that defendant had been driving under the influence of alcohol. Defendant further argued that he was interrogated while in custody without having been advised of his *Miranda* rights.

The State argued that Trooper Goodman had had probable cause to believe defendant had been driving under the influence of alcohol and that there were exigent circumstances justifying the warrantless entry into defendant's home, *i.e.*, the officer was in "hot pursuit," the evidence of driving under the influence of alcohol would dissipate in the time it took to obtain a warrant and driving under the influence of alcohol is deemed a serious offense in Illinois.

The court granted defendant's motions without making any findings of fact or conclusions of law. The order merely states, "Motion To Quash Arrest and Suppress Evidence granted. Motion to Suppress Statements granted." The State filed its certificate of impairment and notice of appeal on March 15, 1989.

■ It is now well settled that police officers cannot make a warrantless, nonconsensual entry into a private residence to effect a routine felony arrest in the absence of exigent circumstances. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.) *Payton* did not answer the question of what constitutes sufficient exigent circumstances to justify such an arrest.

■ A police officer may, however, upon probable cause, effect a warrantless arrest in a public place for any felony, or for a misdemeanor committed in the officer's presence. (*United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820.) Furthermore, a proper warrantless arrest which begins in a public place cannot be thwarted by the act of the arrestee retreating into his home to evade arrest. *United States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406.

In *Santana*, police officers, acting upon probable cause, proceeded to Santana's home to arrest her for distribution of heroin. They had no warrant. Upon arrival at Santana's home, police observed her standing in the doorway to her house, a public place under fourth amendment law. Police officers exited their vehicle and shouted their

identification, whereupon Santana retreated into the vestibule of her house. The police followed and effected her arrest therein.

The Supreme Court held that the arrest of Santana had properly begun in a public place (her doorway), and that this lawful arrest could not be defeated by her act of retreating into her house.

The State argues that the instant case is identical to *Santana*, that Trooper Goodman had begun attempting to arrest defendant in a public place (on a public roadway for speeding and, later, in defendant's driveway for driving while intoxicated), that Trooper Goodman was in "hot pursuit" of defendant, and that defendant could not thwart his lawful arrest by retreating into his home. The State also argues that the need to prevent the destruction of evidence (dissipation of alcohol from defendant's blood) was an exigent circumstance justifying the warrantless home entry.

Defendant argues, on the other hand, that *Santana* involved a serious felony justifying a warrantless entry into the suspect's home, while in the instant case, Trooper Goodman had probable cause to arrest defendant only for the minor offense of speeding. Relying on *Welsh v. Wisconsin* (1984), 466 U.S. 740, 80 L. Ed. 2d 732, 104 S. Ct. 2091, defendant argues that even "hot pursuit" will not justify a warrantless entry into a home to arrest a suspect for a minor, nonjailable offense.

In *Welsh*, the defendant was arrested in his home, without a warrant or consensual entry, for a minor, nonjailable traffic offense. While recognizing that exigent circumstances such as hot pursuit, the threat to public safety or the need to preserve evidence would, in some cases, justify a warrantless home entry to effect an arrest, the Supreme Court held that such an arrest would rarely be reasonable for only a minor offense. Thus, the gravity of the offense for which arrest is sought is a principal factor to be considered in determining whether exigent circumstances will justify a warrantless home entry. In *Welsh*, the Supreme Court found that the need to prevent the destruction of evidence could not justify a warrantless home entry to arrest for a nonjailable traffic offense.

■ The Illinois Supreme Court has also recognized that the gravity of the offense is one of the factors to be considered and balanced in determining whether sufficient exigent circumstances exist to justify a warrantless home entry to effect an arrest. (*People v. Yates* (1983), 98 Ill. 2d 502, 515, 456 N.E.2d 1369, 1376, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.) Thus, in Illinois, a warrantless home entry was not justified to arrest defendants for a nonviolent Class C misdemeanor, possession of cannabis (*People v.*

*Olson* (1983), 112 Ill. App. 3d 20, 444 N.E.2d 1147), but was permitted for a Class A misdemeanor, reckless conduct involving the firing of a gun from a motor vehicle (*People v. Hart* (1980), 88 Ill. App. 3d 484, 410 N.E.2d 633).

In the instant case, defendant was charged with speeding (a petty offense punishable by fine only) and driving under the influence of alcohol (a Class A misdemeanor). The State argues that the offense of driving under the influence is a serious enough offense in Illinois to justify, under the facts of this case, the warrantless entry of defendant's home to arrest him upon probable cause.

We point out that we are inclined to agree with the State that, if Trooper Goodman's version of the facts is taken as true (that he was directly behind defendant and had shouted to defendant to halt, that he had seen defendant stagger from his truck and that he had probable cause to believe defendant had been driving under the influence of alcohol), the warrantless entry of defendant's home to effect his arrest did not violate the fourth amendment's proscription against unreasonable searches and seizures. Under Trooper Goodman's version of the facts, he had begun his arrest of defendant for a Class A misdemeanor in a public place (in defendant's driveway) when he followed defendant and shouted to him to halt. This arrest was lawful under *Payton,* for the misdemeanor of driving under the influence was committed in Trooper Goodman's presence. Under *Santana,* defendant could not thwart this lawful arrest by retreating into his home.

Furthermore, under Trooper. Goodman's version of the facts, we think sufficient exigent circumstances existed to justify the warrantless home entry. Trooper Goodman was in immediate hot pursuit of a person suspected of operating a motor vehicle while under the influence of alcohol, considered a serious offense in Illinois. There was no deliberate or unjustified delay in obtaining a warrant, and there was a very real possibility of the destruction of evidence in the time it would have taken to obtain a warrant, *i.e.,* the alcohol in defendant's blood would have dissipated.

■ However, in the instant case, we are not at liberty to believe Trooper Goodman's version of the facts. Although the trial court failed to make findings of fact, we, as a reviewing court, must presume that the trial court found all issues and controverted facts in favor of the prevailing party, here, the defendant. (*Michael v. First Chicago Corp.* (1985), 139 Ill. App. 3d 374, 380, 487 N.E.2d 403, 408.) Thus, we must take questions of testimonial credibility as resolved in favor of the defendant, and must draw from the evidence all reasonable inferences in support of the judgment. (*Kinsey v. Scott* (1984),

124 Ill. App. 3d 329, 336, 463 N.E.2d 1359, 1364.) Furthermore, a reviewing court will neither presume that error occurred in the trial court nor assume that the trial court misunderstood the applicable law. *American Wheel & Engineering Co. v. Dana Molded Products, Inc.* (1985), 132 Ill. App. 3d 205, 212, 476 N.E.2d 1291, 1296.

■ Under defendant's version of the facts, defendant did not see Trooper Goodman behind him or following him, did not hear Trooper Goodman yell at him to stop, and was well inside his house before Trooper Goodman came crashing through the door. Furthermore, Trooper Goodman was not behind defendant in the driveway, defendant did not stagger while entering his house and Trooper Goodman did not have probable cause to believe defendant had been driving while intoxicated. Thus, Trooper Goodman entered defendant's house without a warrant to issue defendant a speeding ticket. Finally, according to defendant's testimony and that of his wife, Trooper Goodman's entry into the house was not peaceable but, in fact, did minor damage to defendant's home. Under these facts we cannot say that Trooper Goodman's actions in entering defendant's home at 12:45 a.m. without a warrant to issue defendant a speeding ticket were reasonable under the fourth amendment. The trial court did not err in quashing defendant's arrest for speeding and driving under the influence of alcohol and suppressing evidence obtained as a result thereof.

■ There is one final matter which we must clear up with respect to this issue. The State has argued that "hot pursuit" is an exception to the warrant requirement separate and distinct from the exigent circumstances exception. We do not find this to be true. The cases do not discuss a separate hot pursuit exception to the warrant requirement, but discuss it within the context of discussing exigent circumstances. Hot pursuit is merely one factor to be considered in determining whether exigent circumstances justified a warrantless home entry. See *Dorman v. United States* (1969), 435 F.2d 385, 391 ("Another doctrine excusing failure to obtain a warrant in case of entry for arrest has been cast in terms of 'exigent circumstances,' or 'necessitous circumstances.' While some decisions also refer to condition of 'hot pursuit,' this term is not a limitation but rather an illustration of the kind of exigent circumstance justifying entry without a warrant to arrest a suspect").

■ In its brief, the State argues that, if the trial court erred in quashing defendant's arrest, it also erred in suppressing any statements defendant may have made as a result of his arrest. The State appears to concede in its reply brief that, if the trial court properly quashed defendant's arrest, it also properly suppressed any state-

ments made as a result of his arrest. We find that any statements defendant made were a result of his illegal arrest and that the mitigating factors set forth in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, were not present to remove the taint of the illegal arrest from the statements. The trial court did not err in suppressing defendant's statements made as a result of his illegal arrest.

For the foregoing reasons, the judgment of the circuit court of Wayne County is hereby affirmed.

Affirmed.

CHAPMAN and HOWERTON, JJ., concur.