**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 32673**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2007 Opinion No. 22 |
| | ) | |
| Plaintiff-Appellant, | ) | Filed: April 25, 2007 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| LINDA BETH ROBINSON, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. D. Duff McKee, District Judge. Hon. Michael J. Reardon, Magistrate.

Order of the district court, on appeal from the magistrate division, affirming order granting motion to suppress evidence, reversed.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Robert R. Chastain, Boise, for respondent.

_____

GUTIERREZ, Judge

The state appeals from the district court's order on intermediate appeal affirming the magistrate's order granting Linda Beth Robinson's motion for suppression of evidence.[1] We reverse.

## I.

## BACKGROUND

The magistrate set forth the following facts of the case in his memorandum opinion and order granting Robinson's motion to suppress:

Shortly after midnight on December 18th, 2004, police were contacted by a man and woman, traveling together, who reported they were following a woman

_____

[1] The magistrate also granted the state's motion to stay the jury trial pending the outcome on appeal.

1

who appeared to be intoxicated. Officer Larry Moore of the Boise Police Department spoke with the couple, who described the driving pattern of the suspect vehicle to include: stopping in the traffic lane with a turn signal flashing for no apparent reason, running a stop sign, weaving in her lane of travel and across the bike lane, and almost striking parked cars. The couple also reported to Moore they had followed the vehicle to a residence, and identified for Moore both the vehicle and the residence.

Prior to Moore approaching the residence, Officer Harms and Sgt. Hagler, both Boise Police officers, knocked on the door of the residence, and were greeted by one Jonathan Orenstein, Defendant's cohabitant at the residence. Sgt. Hagler asked to speak with the operator of the suspect vehicle, and Defendant came to the door. During this initial conversation, apparently in response to Hagler's request, Defendant provided her driver's license.

When Moore approached the residence to speak with the Defendant, the door was open, and Defendant was seated on the arm of a loveseat, approximately three to four feet inside the residence. During Moore's brief conversation with the Defendant, she acknowledged having driven the car from "Mandalay Bay", where she had consumed "cocktails", which she later identified as beer. Both Hagler and Moore noted a strong odor of alcoholic beverage coming from the Defendant, and both noted slurred speech. The audio [recording] of the conversation also indicates that Defendant's speech had the characteristics one would normally associate with someone who was under the influence of alcohol.

Moore requested to come into the house to perform field sobriety tests, and Defendant refused to allow him entry. Moore also asked Defendant to come outside, which she likewise refused to do. It appears from the audio of the incident that Moore had begun to announce his intention to place Defendant under arrest, when Defendant stood up, and began to shut the door. At that time, Sgt. Hagler told Defendant she was under arrest, and both officers came through the threshold of the doorway to take custody of the Defendant.

While there was conflicting testimony regarding whether Moore had his foot on the threshold of the door while in conversation with Defendant, there is no question that he used his foot to keep her from closing the door when she attempted to terminate the conversation and retreat into her home.

The magistrate determined that the police had probable cause to arrest Robinson and, considering that her blood alcohol concentration would quickly dissipate if time were taken to obtain a warrant, also determined that exigent circumstances existed. However, because the charge involved a misdemeanor and because the magistrate determined that the officers' actions exceeded those allowed by the exigency, the magistrate granted Robinson's motion to suppress. The district court affirmed on intermediate appeal.

## II.

## STANDARD OF REVIEW

On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct. App. 1993). The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."[2] *United States v. United States District Court,* 407 U.S. 297, 313 (1972).

> [The Fourth Amendment] unequivocally establishes the proposition that at the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton v. New York*, 445 U.S. 573, 589-90 (1980). Warrantless searches and seizures inside a home are presumptively unreasonable. *Id.* at 586. "[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin,* 466 U.S. 740, 749-750 (1984); *see, e.g., Brigham City, Utah v. Stuart,* ___ U.S. ___, 126 S. Ct. 1943, 1947 (2006) (listing exceptions to warrant requirement).

Robinson contends that application of the exclusionary rule is justified because the police lacked probable cause to arrest her at the moment she responded and came to the door. Probable cause is "the possession of information that would lead a person of ordinary care and prudence to

---

[2] "The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV.

3

believe or entertain an honest and strong presumption that such person is guilty." *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is a flexible, common-sense standard; a practical, nontechnical probability, but not necessarily a belief more likely true than false, that the person to be arrested has committed a crime. *See Texas v. Brown*, 460 U.S. 730, 742 (1983). "In analyzing whether probable cause existed, this Court must determine whether the facts available to the officers *at the moment of the seizure* warranted a person of reasonable caution to believe that the action taken was appropriate." *State v. Gibson,* 141 Idaho 277, 282, 108 P.3d 424, 429 (Ct. App. 2005) (emphasis added). In other words, probable cause is necessary at the moment officers enter a home.

Prior to the officers' entry, Robinson identified herself as the driver of the suspect vehicle and admitted driving the vehicle after drinking cocktails. The officers noted her slurred speech and the strong odor of alcoholic beverage coming from her direction. This information corroborated citizen witnesses who earlier reported seeing Robinson exhibit erratic and illegal driving behavior shortly before the officers contacted her at home. Based on these facts, we agree with the magistrate's conclusion that the officers had probable cause to arrest Robinson.

The magistrate in the instant case further determined that probable cause for a *felony* and exigent circumstances was required prior to a lawful warrantless home entry. *See State v. Maland,* 140 Idaho 817, 824, 103 P.3d 430, 437 (2004). The state contends that the magistrate erred because a crime need not be a felony to trigger the exigent circumstances exception to the Fourth Amendment's warrant requirement and because the officers' actions did not exceed the scope of the evidence preservation exigency.

"[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City*, 126 S. Ct. at 1947 (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978)). A warrantless search under this exception must be strictly circumscribed by the nature of the exigency that justifies the intrusion. *State v. Butterbaugh*, 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct. App. 2002). The traditional exigencies that may justify a warrantless entry by law enforcement officers are pursuit of a fleeing felon, imminent risk of destruction of evidence, prevention of a suspect from escaping, or danger to the police or to other persons inside or outside the dwelling. *State v. Bunting*, 142 Idaho 908, 912, 136 P.3d 379, 383 (Ct. App. 2006). The reach of the doctrine is

explained in the analysis of the Idaho Supreme Court in *State v. Fees*, 140 Idaho 81, 90 P.3d 306 (2004), which considered the decisions of the United States Supreme Court involving different classifications of offenses.

The trial court, in *Fees*, granted the defendant's motion to suppress, ruling that the warrantless entry into Fee's residence to preserve evidence was unreasonable because it was to preserve evidence of a nonviolent felony. The trial court relied on *State v. Curl*, 125 Idaho 224, 869 P.2d 224 (1993), which looked to *Welsh* wherein the United States Supreme Court held that it was unreasonable under the Fourth Amendment for police to enter into the home of someone suspected of drunken driving in order to preserve evidence of his blood alcohol level in a jurisdiction classifying the offense as a civil infraction. The *Welsh* court stated, "When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness [from a warrantless house entry] is difficult to rebut. . . ." 466 U.S. at 750. The Court explained that "[g]iven that the classification of state crimes differs widely among the States, the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." *Id*. at 754 n.14. Because *Welsh* had not defined what else might constitute a minor offense, however, the *Curl* court drew the line based upon the nature of the criminal conduct (i.e., violent versus nonviolent), so as to include nonviolent misdemeanors.

In *Fees*, our Supreme Court acknowledged that the line drawn in *Curl* as to what constitutes a "minor offense" was inaccurate*.* Ultimately, the *Fees* court concluded that when *Welsh* is read together with *Illinois v. McArthur,* 531 U.S. 326 (2001), a more recent high court decision, the determination of what constitutes a "relatively minor" offense under the Fourth Amendment is based on the nature of the criminal conduct's penalty, not the nature of the criminal conduct itself. *Fees*, 140 Idaho at 88, 90 P.3d at 313. The *McArthur* court drew the line between crimes that are "jailable versus nonjailable," and suggested it would allow warrantless non-entry seizures for jailable misdemeanors as diverse as "drag racing, drinking alcohol in a railroad car or on a railroad platform, bribery by a candidate for public office, and assault." *See McArthur,* 531 U.S. at 336. However, the *McArthur* court expressly avoided the question whether the circumstances would have justified the greater intrusion of a warrantless home entry for the jailable misdemeanor marijuana offense in that case.

Although *Fees,* unlike *McArthur,* involved a warrantless entry and a jailable felony, the logical implication from the state and federal cases is that jailable misdemeanors are encompassed within the exigent circumstances exception allowing warrantless entry to preserve evidence. *See McArthur* at 337 (Souter, J., concurring) (emphasizing justification for warrantless search had McArthur remained inside to destroy evidence of the jailable misdemeanor crime). The United States Supreme Court has "never held that a warrant is constitutionally required to arrest for nonfelony offenses occurring out of the officer's presence." *Welsh,* 466 U.S. at 756 (White, J., dissenting). "[N]othing . . . suggests that the fact that a State has defined an offense as a misdemeanor for a variety of social, cultural, and political reasons necessarily requires the conclusion that warrantless in-home arrests designed to prevent the imminent destruction or removal of evidence of that offense are always impermissible." *Id.* at 760-61.

Directly on point, *People v. Thompson,* 135 P.3d 3, 11 (Cal. 2006) reflects the vast majority of jurisdictions rejecting the bright line felony rule. *Id.* at 10-11; *see also Joyce v. Town of Tewksbury, Mass.*, 112 F.3d 19, 22 (1st Cir. 1997) (en banc); *Mendez v. People,* 986 P.2d 275, 283 (Colo. 1999); *Dyer v. State*, 680 So.2d 612, 613 (Fla. Dist. Ct. App. 1996); *Threatt v. State,* 524 S.E.2d 276, 280 (Ga. App. 1999); *People v. Lagle,* 551, 558 N.E.2d 514, 519 (Ill. App. 1990); *State v. Legg*, 633 N.W.2d 763, 773 (Iowa 2001); *State v. Paul,* 548 N.W.2d 260, 267 (Minn. 1996); *City of Kirksville v. Guffey*, 740 S.W.2d 227, 229 (Mo. Ct. App. 1987); *State v. Ellinger,* 725 P.2d 1201, 1204 (Mont. 1986); *State v. Nikola*, 821 A.2d 110, 118 (N.J. App. Div. 2003); *People v. Odenweller*, 527 N.Y.S.2d 127, 129 (1988); *Beachwood v. Sims*, 647 N.E.2d 821, 825 (Ohio App. 1994); *State v. Roberts*, 706 P.2d 564, 566 (Or. App. 1985); *Beaver v. State,* 106 S.W.3d 243, 248 (Tex. App. 2003); *City of Orem v. Henrie,* 868 P.2d 1384, 1392 (Utah Ct. App. 1994); *Cherry v. Com.,* 605 S.E.2d 297, 307 (Va. App. 2004); *State v. Griffith,* 808 P.2d 1171, 1176, 1176 n.7 (Wash. App. 1991); *Goines v. James,* 433 S.E.2d 572, 577-578 (W. Va. 1993); *State v. Hughes*, 607 N.W.2d 621, 631 (Wis. 2000); *Rideout v. State,* 122 P.3d 201, 210 (Wyo. 2005). Accordingly, the misdemeanor driving under the influence (DUI) offense of which Robinson was suspected, which carries a penalty of up to six months jail time, I.C. § 18-8005, falls under the category of a jailable offense within the exigent circumstances doctrine. The distinction between felony and misdemeanor for purposes of the exigent circumstances doctrine no longer has a valid basis in state or federal law.

Justification for a warrantless entry hinges upon whether the intrusion was objectively reasonable under the circumstances. *Brigham City,* 126 S. Ct. at 1947. The magistrate found Robinson's person contained evidence that was evanescent in nature and would quickly dissipate if time were taken to seek a warrant. *See Welsh,* 466 U.S. at 753; *Schmerber v. California,* 384 U.S. 757, 770-71 (1966) (warrantless blood alcohol test reasonable where delay would cause loss of evidence); *State v. Woolery,* 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989) ("destruction of the evidence by metabolism of alcohol in the blood provides an inherent exigency. . . ."). The magistrate further concluded, however, that the officers' actions exceeded the scope of the evidence preservation exigency.

We apply an objective standard to determine whether the action taken was appropriate for a person of reasonable caution given the facts known to the official at the time of entry, along with reasonable inferences drawn therefrom. *State v. Barrett,* 138 Idaho 290, 293, 62 P.3d 214, 217 (Ct. App. 2003). The exigent circumstances exception does not apply where there is time to secure a warrant. *See Michigan v. Tyler*, 436 U.S. 499, 509 (1978); *State v. Worthington,* 138 Idaho 470, 472, 65 P.3d 211, 213 (Ct. App. 2002). In *Welsh,* the police arrested the defendant for DUI within a half-hour from his reported drunken driving incident. This made it unlikely that Welsh "could cast substantial doubt on the validity of a blood or breath test by consuming additional alcohol upon arriving at his home." *Welsh,* 466 U.S. at 763 (White, J., dissenting). In the case at hand, the officers arrived promptly at Robinson's home. Officer Moore arrived minutes later, and entered the home to arrest Robinson only after she refused either to come outside or to allow the officers to perform field sobriety tests inside the home. The officers further testified regarding the impracticability of obtaining a warrant at such a late night hour, saying it ordinarily took several hours. *Compare Vale v. Louisiana,* 399 U.S. 30, 35 (1970) (finding warrantless home entry unreasonable where practical to obtain warrant).

We conclude there were exigent circumstances given the serious penalty associated with the DUI offense and specific, articulable facts reasonably indicating imminent destruction of evidence, i.e., dissipation of blood-alcohol content. The officers' response was appropriately tailored to the scope of the exigency. In line with *Payton*, therefore, the Fourth Amendment was not offended when officers immediately entered Robinson's home with reasonable cause to prevent destruction of DUI-related evidence.

7

We need not decide and do not hold that law enforcement officers may enter a home without a warrant to effectuate an arrest in *every* misdemeanor case. *See Welsh,* 466 U.S. at 749 n. 11. We hold merely that the police conduct here, under these circumstances, was reasonable as "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms,* 434 U.S. 106, 109 (1977).

## IV.

## CONCLUSION

Because the Fourth Amendment permits a reasonably tailored warrantless entry into a residence upon coexistence of probable cause for a jailable offense and exigent circumstances, the officers lawfully entered Robinson's home without a warrant to prevent destruction of blood alcohol evidence. Accordingly, the district court's order affirming the magistrate's order granting the motion to suppress is reversed.

Judge LANSING **CONCURS**.

Judge Pro Tem **SCHWARTZMAN SPECIALLY CONCURRING**

I concur in the general reasoning and result reached in this case, but write separately to highlight several points and articulate a few restraints.

The analysis section of the Court's opinion begins with the quote that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." To this I would add, "We have, after all, lived our whole national history with an understanding of 'the ancient adage that a man's home is his castle [to the point that] the poorest man may in his cottage bid defiance to all the forces of the Crown.'" *Georgia v. Randolph*, 547 U.S. 103, ___, 126 S. Ct. 1515, 1524 (2006) (citing *Miller v. United States*, 357 U.S. 301, 307 (1958)). This noble precept is not just some forgotten vestige of post Magna Carta English history, but is embedded in the framework and fabric of our national consciousness through the Fourth Amendment.

That said, this case presents sufficient countervailing considerations to justify the limited warrantless entry to effectuate an arrest herein. Our Legislature has long recognized the serious criminal nature of the DUI offense and the havoc it produces in our society, such that it has specifically authorized a peace officer to make an arrest for this misdemeanor offense even when not committed in the officer's presence. Idaho Code Section 49-1405 states, in relevant part:

8

(1) The authority to make an arrest is the same as upon an arrest for a felony when any person is charged with any of the following offenses: . . . (b) Driving, or being in actual physical control, of a vehicle or operating a vessel while under the influence of alcohol or other intoxicating beverage.

This case also presents a well-founded concern and reason supporting exigent circumstances, i.e., the dissipation and destruction of evidence through the normal bodily metabolic processes of alcohol elimination. This corruption of evidence is not merely a theoretical possibility or contrived hypothetical scenario justifying immediate action. Time was of the essence here. The state's interest in effecting a DUI arrest was substantial and there was strong evidence to suggest that Robinson had committed the offense.

The intrusion on defendant's privacy, by contrast, was a diminished one. She was plainly visible just over the threshold of the open door. This not only rendered a forcible entry unnecessary, but it exposed to public view the very area where the arrest was to soon occur. Moreover, the officers entered only a few feet inside beyond the threshold, such that the home intrusion was the minimum necessary to effect the arrest and extended only to the area already open to police observation. No general search of the residence took place. *See People v. Thompson*, 135 P. 3d 3, 14 (Cal. 2006). In short, it was reasonable under these circumstances for the police to briefly and barely enter the home without a warrant to effectuate an arrest and thereby prevent the imminent destruction of evidence of a serious misdemeanor crime. The officers' response was reasonably tailored to the scope of the exigency. *Id*. at 13-14.

Our decision today does not decide or hold that police may enter a home without a warrant to effectuate an *arrest* in every misdemeanor case. Not only must there be a true exigency, but the police must also possess the requisite probable cause and act under a statute like I.C. §§ 49-1405 or 19-603(6); or otherwise observe the public offense being committed in their presence. *See* I.C. § 19-603(1). Reasonableness will also be the touchstone for future decisions.