39 P.3d 637

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Timothy Dale COOPER, Defendant–Appellant.**

No. 26257.

Court of Appeals of Idaho.

Nov. 21, 2001.

Review Denied Jan. 28, 2002.

Tim Gresback, Moscow, for appellant.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

SCHWARTZMAN, Chief Judge.

Timothy Dale Cooper was involved in an alcohol related automobile collision and convicted of four counts of aggravated DUI, I.C. § 18–8006, and one count of vehicular manslaughter, I.C. § 18–4006(3)(a) and (b). He appeals the district court's denial of his motion to suppress evidence of his blood alcohol content obtained through a blood draw. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 13, 1999, at about 6:53 p.m., Cooper, accompanied by his young son, drove his Ford Bronco southbound on U.S. Highway 95 in Bonner County, crossed into the opposing traffic lane, and collided with a Honda sedan. The driver of the Honda, Jessica Haller, was killed. The four passengers in the Honda sedan, all family and friends of Jessica, were seriously injured. Emergency Medical Technicians (E.M.T.s) were assisting the injured when Idaho State Police Trooper Terry Ford and Sergeant Tim Johnson arrived at the scene five minutes after the collision. Johnson and an E.M.T. each told Ford that Cooper's breath smelled of alcohol.

Cooper was transported by helicopter to Kootenai Medical Center for treatment of his own injuries. Ford drove his patrol car to Kootenai Medical Center to obtain a blood sample from Cooper. Upon arriving at 7:58 p.m. Ford had to wait a few minutes for doctors to check Cooper over. Before Cooper was sent for a CT scan, Ford entered the emergency room, smelled alcohol on Cooper's breath, read Cooper the administrative license suspension form, and asked if he would submit to a blood test. Cooper asked, "Don't I have a right to talk to an attorney?" Ford told Cooper that he did not have a right to speak to an attorney first. Ford ordered a registered nurse to draw Cooper's blood. At about 9:15, following the CT scan, Cooper's blood was drawn by a registered nurse. While Cooper did not expressly consent to the procedure, he offered neither a verbal refusal nor any physical resistance. The blood samples revealed a blood alcohol content of .18 percent.

Cooper was charged with one count of vehicular manslaughter and four counts of aggravated DUI. Cooper filed a motion to suppress the blood alcohol evidence on the basis that the blood samples were taken without his consent. At the hearing on the motion to suppress, Ford testified as set forth above. The parties stipulated to the admission of the preliminary hearing transcript as evidence in the hearing on Cooper's motion to suppress. The state also stipulated to the fact that Ford could have obtained a telephonic search warrant prior to drawing Cooper's blood. Counsel for Cooper argued that Idaho's implied consent statute is unconstitutional under both the state and federal Constitutions.

The district court denied Cooper's motion, determining that a telephonic warrant was unnecessary because Idaho's implied consent statute provides a constitutional exception to the warrant requirement. Cooper entered a conditional guilty plea to all the charges against him. The district court sentenced Cooper to seven years, with three years fixed, for vehicular manslaughter, and to concurrent terms of two years fixed for the aggravated DUIs. Cooper appeals.

## II.

## STANDARD OF REVIEW

■ Ordinarily, in reviewing a trial court's ruling on a motion to suppress, we employ a

bifurcated standard. *State v. Abeyta*, 131 Idaho 704, 708, 963 P.2d 387, 391 (Ct.App. 1998). We accept the trial court's findings of fact that are supported by substantial evidence and "freely review the application of constitutional principles to the facts as found." *Id.* (quoting *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct.App.1997)). Here, neither party disputes the facts presented at the hearing on the motion to suppress. Thus, we exercise free review in determining whether the blood draw in this case was one permitted under the Fourth Amendment of the Constitution.[1] *See State v. Pick*, 124 Idaho 601, 604, 861 P.2d 1266, 1269 (Ct.App.1993).

### III.

### DISCUSSION

#### A. Introduction

 The Fourth Amendment to the United States Constitution guarantees "The right of the people to be secure in their persons ... against unreasonable searches and seizures." The administration of a blood alcohol test is a seizure of the person and a search for evidence within the purview of the Fourth Amendment to the United States Constitution. *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Woolery*, 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989); *State v. Curtis*, 106 Idaho 483, 680 P.2d 1383 (Ct.App.1984). Warrantless searches or seizures are presumptively unreasonable unless they come within one of several judicially recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76(1971); *Woolery*, 116 Idaho at 370, 775 P.2d at 1212.

 Consent is a well-recognized exception to the Fourth Amendment's warrant requirement. *State v. Rodriguez*, 128 Idaho 521, 523, 915 P.2d 1379, 1381 (Ct.App.1996). Idaho's driver licensing scheme provides, as a condition of possessing a valid license, that

a driver of a motor vehicle is deemed to have consented to an evidentiary test for blood alcohol concentration where there are reasonable grounds to believe that the person has been driving or in actual physical control of a motor vehicle in violation of the DUI laws. Idaho Code § 18–8002(1); *McNeely v. State*, 119 Idaho 182, 187, 804 P.2d 911, 916 (Ct.App.1990); *see also South Dakota v. Neville*, 459 U.S. 553, 559, 103 S.Ct. 916, 920, 74 L.Ed.2d 748, 755–56 (1983). Generally, refusal to submit to evidentiary testing results in a suspension of the driver's privileges and denies the state of additional evidence of DUI. However, I.C. § 18–8002(6)(b) specifically provides that:

> A peace officer is empowered to order an individual authorized in section 18–8003, Idaho Code, to withdraw a blood sample for evidentiary testing when the peace officer has probable cause to believe that the suspect has committed any of the following offenses:
>
> (i) Aggravated driving under the influence of alcohol, drugs or other intoxicating substance as provided in section 18–8006, Idaho Code;
>
> (ii) Vehicular manslaughter as provided in subsections (3)(a), (b) and (c) of section 18–4006, Idaho Code. . . .

Here, it is uncontested that Ford had probable cause to believe that Cooper had committed both aggravated DUI and vehicular manslaughter. Accordingly, Cooper's request for counsel—apparently interpreted by Ford as a verbal refusal—did not bar Ford from legally obtaining a blood sample to test Cooper's blood alcohol content. I.C. § 18–8002(6)(b)(i) and (ii).

#### B. Implied Consent Cannot Be Revoked

 Cooper argues that he revoked his previously implied consent when he refused to submit to a blood test and that the consequence of his refusal is suspension of his driver's license pursuant to I.C. § 18–8002A. This issue was previously raised and rejected in *Woolery*, where our Supreme Court held

---

1. Our analysis is based upon authorities addressing the Fourth Amendment. Because Cooper has not presented any argument that Art. I, § 17, affords a greater scope of protection, we do not

separately address the state Constitution. *State v. Rodriguez*, 128 Idaho 521, 524 n. 1, 915 P.2d 1379, 1382 n. 1 (Ct.App.1996).

that the Idaho Legislature has acknowledged a driver's physical ability to refuse to submit to an evidentiary test, but did not create a statutory right for a driver to withdraw his previously given consent to an evidentiary testing for alcohol, drugs or other intoxicating substances. 116 Idaho at 372, 775 P.2d at 1214. As explained in *Woolery:*

> "[C]onsent" and "refusal" are not used as antonyms, because they are not used in the same sense. "Consent" describes a legal act; "refusal" describes a physical reality. By implying consent, the statute removes the *right* of a licensed driver to lawfully refuse, but it cannot remove his or her *physical power* to refuse. As another court put it:
>
>> The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is "deemed to have given his consent" is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates. It is firmly established that a drunken driver has no *right* to resist or refuse such a test [citations omitted]. It is simply because such a person has the *physical power* to make the test impractical, and dangerous to himself and those charged with administering it, that it is excused upon an indication of his unwillingness.... *Bush v. Bright,* 264 Cal. App.2d 788, 790, 792, 71 Cal.Rptr. 123 at 125 (1968) (original emphasis).

*Id.* at 372–73, 775 P.2d at 1214–15 (quoting *State v. Newton,* 291 Or. 788, 636 P.2d 393, 397–98 (1981)). *See Municipality of Anchorage v. Ray,* 854 P.2d 740 (Alaska Ct.App. 1993) (approving a blood draw as consensual under Alaska's implied consent scheme over Ray's apparently nonphysical refusal to submit to such).

Accordingly, we hold that Cooper's failure to give a verbal consent to a blood draw was not a revocation of his implied consent to submit to such pursuant to I.C. § 18–8002.

## C. Scope Of I.C. § 18–8002(6)(b)(i) and (ii) Following A Refusal

In *Woolery,* the Court also discussed the scope of I.C. § 18–8002 prior to the inclusion of subsection (6)(b)(i) and (ii):

> This section does not in any way discuss criminal offenses related to driving under the influence of alcohol. Rather, it sets forth the administrative procedures the legislature established in its attempt "to restrict or control the use of the highways by those persons who cannot or will not conform their actions to the accepted standards of civilized behavior." [Citation omitted.] The legislature acknowledged that some individuals refuse to comply with their previously granted consent to submit to an evidentiary test. Rather than condone a physical conflict, the legislature provided for the administrative revocation of the license of an individual who refuses to comply with his previously given consent. Such legislative acknowledgement was not meant to hamstring the ability of law enforcement to properly investigate and obtain evidence of serious crimes committed by those individuals who have chosen to drink and then drive.
>
> . . . .
>
> For the driver who has been involved in an accident *which causes either serious injury* [aggravated DUI] *or death* [vehicular manslaughter], the state must have the usual authority to investigate and collect evidence which exists in any other felony investigation. Thus, a driver's refusal to peacefully submit to an evidentiary test should not preclude law enforcement from making a probable cause seizure of his blood. In *Schmerber,* the United States Supreme Court recognized that a warrantless seizure of the blood of a driver, as long as probable cause exists and the withdrawal of the blood is done in a reasonable fashion, does comply with the provisions of the [F]ourth [A]mendment. Thus, where probable cause exists and the evidentiary test was conducted in a reasonable manner, whether or not the officer complied with the provisions of I.C. § 18–8002(3), the results of the evidentiary test should be admissible in a criminal prosecution.

116 Idaho at 373–74, 775 P.2d at 1215–16 (emphasis added). Essentially, *Schmerber* provides an alternative to implied consent under state laws, stating that taking blood with probable cause, but without a warrant,

is justified under the exigent circumstance exception to the warrant requirement, since blood alcohol concentration begins to dissipate due to the body's natural metabolism of alcohol shortly after a person stops drinking. *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. at 1836, 16 L.Ed.2d at 919–20; *see also Ray,* 854 P.2d at 747 (Society's interest in obtaining timely and accurate measurement of a motorist's blood alcohol content is necessarily greater in cases where the motorist has killed or injured another person and thus the legislature could reasonably conclude that society's interests outweigh the normal DUI policy of discouraging confrontation between police and motorists.); *State v. Bohling,* 173 Wis.2d 529, 494 N.W.2d 399, 401–02 (1993).

 After the *Woolery* decision, the Idaho Legislature expanded the scope of the implied consent statute to include aggravated DUI and vehicular manslaughter, and to authorize law enforcement officers to order medical personnel to conduct a blood draw consistent with the statute in those cases. Thus, under I.C. § 18–8002(6)(b), a request for "consent" to draw blood is a mere courtesy. *See Schmerber, supra.* In light of this statutory authority, the only purpose of asking permission to draw a blood sample in aggravated DUI and vehicular manslaughter cases is to obtain actual consent and gain the defendant's cooperation or acquiescence. As set forth above, Ford was unable to gain Cooper's express assent. However, such consent is by no means constitutionally necessary. "A blood test, unless performed with inappropriate force, does not offend any basic values of fairness underlying the constitutional guaranty of due process." *State v. Curtis,* 106 Idaho 483, 488, 680 P.2d 1383, 1388 (Ct.App.1984) (citing *Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957)). *But see State v. Ravotto,* 169 N.J. 227, 777 A.2d 301 (2001) (physical restraint of defendant over his strenuous objection and physical resistance in order to forcibly extract blood held to be constitutionally unreasonable).

We hold that the seizure of samples of Cooper's blood obtained without the use of force was constitutionally reasonable. Idaho has a compelling interest in protecting citizens from the carnage caused by drunk drivers and that interest is heightened when a drunk driver causes a collision resulting in injury and/or death. *See State v. Henderson,* 114 Idaho 293, 296, 756 P.2d 1057, 1060 (1988); *Ray,* 854 P.2d at 750. This compelling interest, combined with the exigency created by the evanescent nature of blood alcohol, justifies an exception to the warrant requirement in this case despite the state's admission that a warrant "could" have been obtained through the exercise of due diligence.

Accordingly, we uphold the drawing of Cooper's blood, without his express consent and without a warrant, pursuant to I.C. § 18–8002(6)(b), as reasonable under the Fourth Amendment.

### IV.

### CONCLUSION

The district court's denial of Cooper's motion to suppress is affirmed.

Judge PERRY and Judge Pro Tem KOSONEN CONCUR.