65 P.3d 211

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Scott Arthur WORTHINGTON, Defendant–Appellant.**

**No. 27890.**

Court of Appeals of Idaho.

Nov. 20, 2002.

Review Denied March 19, 2003.

Molly J. Huskey, State Appellate Public Defender; Richard J. Hansen, Deputy Appellate Public Defender, Boise, for appellant. Richard J. Hansen argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

LANSING, Judge.

After being arrested for driving under the influence of alcohol (DUI), Scott Arthur Worthington refused to submit to a breath test or blood test to determine alcohol concentration. He was therefore taken to a hospital, where a forcible blood draw was conducted. Worthington moved to suppress the results of the blood test on the ground that use of force to obtain the blood sample was unreasonable and violated his Fourth Amendment rights. Following the denial of that motion, Worthington entered a conditional guilty plea, reserving his right to appeal the suppression issue. We affirm.

## BACKGROUND

After police received a report that Worthington was driving recklessly, an officer found him parked on the side of a road where his vehicle had run out of fuel. The officer observed that Worthington appeared to be under the influence of alcohol and therefore arrested him. Worthington refused to perform any field sobriety tests and informed the arresting officer that he would not submit to any procedures to determine the alcohol content of his blood or breath. Instead, he told the arresting officer "that if [the officer] was going to get blood out of him, that [the officer] was going to have to fight

him." Two other officers thereafter transported Worthington to the Gooding Hospital to have his blood drawn for testing. No warrant had been issued authorizing the procedure.

At the hospital, Worthington became very combative. Three police officers and two nurses held him onto a table so that a laboratory technician could draw his blood. During this process, Worthington was handcuffed with a belly restraint. The blood was taken from Worthington's ankle because the technician could not find a usable vein in either of his arms. Laboratory tests showed that Worthington's blood alcohol concentration was 0.26, more than three times the .08 percent limit for driving. *See* Idaho Code § 18–8004(1)(a).

After Worthington was charged with felony DUI, I.C. §§ 18–8004, –8004C, –8005(7), he moved to suppress the blood test evidence on the ground that the forcible extraction of his blood violated the Fourth Amendment guarantee against unreasonable searches and seizures. The district court, after an evidentiary hearing, found that the force used to restrain Worthington was reasonable, and denied the motion. Worthington thereafter entered a conditional guilty plea, reserving his right to appeal the denial of the suppression motion.

## ANALYSIS

■ When reviewing a trial court's ruling on a motion to suppress evidence, this Court defers to the trial court's findings of fact if they are supported by substantial, competent evidence, but we freely review the application of constitutional standards to the facts as found. *State v. Holton,* 132 Idaho 501, 503, 975 P.2d 789, 791 (1999); *State v. Silva,* 134 Idaho 848, 852, 11 P.3d 44, 48 (Ct.App.2000). In this case, the facts are uncontroverted, and we are, therefore, presented only with issues of law.

■ The administration of a blood alcohol test constitutes a seizure of the person and a search for evidence within the purview of the Fourth Amendment to the United States Constitution. *Schmerber v. California,* 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16

L.Ed.2d 908, 917 (1966); *State v. Nickerson,* 132 Idaho 406, 409–10, 973 P.2d 758, 761–62 (Ct.App.1999). Searches and seizures conducted without a warrant are presumptively unreasonable. *Schmerber,* 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919; *State v. Curtis,* 106 Idaho 483, 488, 680 P.2d 1383, 1388 (Ct.App.1984). Therefore, when a defendant challenges a warrantless search or seizure, the State must show the applicability of an exception to the warrant requirement. *Nickerson,* 132 Idaho at 410, 973 P.2d at 762.

■ The exigent circumstances exception allows agents of the State to conduct a warrantless search when there is a "compelling need for official action and no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 498 (1978); *State v. Wren,* 115 Idaho 618, 624, 768 P.2d 1351, 1357 (Ct.App.1989). It is well established that blood draws to test for alcohol concentration fall within this exigency exception because blood alcohol content diminishes over time, and valuable evidence would be lost in the time required to obtain a warrant. *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. at 1835–36, 16 L.Ed.2d at 919–20; *State v. Woolery,* 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989); *State v. Cooper,* 136 Idaho 697, 700–01, 39 P.3d 637, 640–41 (Ct.App. 2001); *Curtis,* 106 Idaho at 489, 680 P.2d at 1389. In addition, the Idaho legislature has enacted an implied consent statute, I.C. § 18–8002(1), which provides that anyone driving on Idaho roads is deemed to have impliedly consented to evidentiary testing for the presence of alcohol or drugs when a police officer has reasonable cause to believe the person was driving under the influence. *See Woolery,* 116 Idaho at 372, 775 P.2d at 1214.

■ Whether justified under the exigent circumstances exception or under Idaho's implied consent statute, a blood draw remains subject to Fourth Amendment standards of reasonableness. *Schmerber,* 384 U.S. at 768, 86 S.Ct. at 1834, 16 L.Ed.2d at 918. Therefore, the procedure must be conducted without unreasonable force and in a medically acceptable manner. *Schmerber,* 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920; *Cooper,* 136 Idaho at 701, 39 P.3d at 641

(blood test not unconstitutional unless performed with "inappropriate force"). Fourth Amendment standards of reasonableness are assessed in objective terms by examining the totality of the circumstances. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 456 (1989); *State v. Weaver,* 127 Idaho 288, 291, 900 P.2d 196, 199 (1995); *Limbert v. Twin Falls County,* 131 Idaho 344, 347–48, 955 P.2d 1123, 1126–27 (Ct.App.1998).

■ Worthington argues that the amount of force used to restrain him for the blood draw was unreasonable. The State responds that although force was used in order to extract Worthington's blood, due to his vigorous resistance, this force was no greater than that which was reasonably necessary to accomplish the task and preserve the evidence. Witnesses at the suppression hearing testified that Worthington was "fighting hard"—kicking, cursing and flailing about. Because the lab technician feared that someone could be accidentally stuck by the needle, she asked police to have enough people hold Worthington still so that she could safely draw his blood. In response to her request, three officers and two nurses held Worthington while the lab technician extracted the blood.

We have found no Idaho appellate court decisions addressing the degree of force that may be used in this context, but courts from other jurisdictions have allowed the use of considerable force when it was shown to be necessary to restrain the suspect in order to obtain a blood sample. On the other hand, suppression has resulted when the police applied unnecessary force or physical abuse. The following cases are illustrative.

In *State v. Lanier,* 452 N.W.2d 144 (S.D. 1990), the defendant resisted the medical technologist's attempt to draw blood, requiring five or six police officers to restrain him. The officers used no more force than necessary to hold the defendant still. The court held that the force used was reasonable under the circumstances of that case. *Id.*

Likewise, in *Carleton v. People,* 170 Cal. App.3d 1182, 216 Cal.Rptr. 890 (1985), the defendant aggressively resisted the police officers who held him down while his blood was drawn. The defendant's resistance was so vigorous that it required six officers to control him. None of the officers struck or physically abused the defendant. The court held that the police acted reasonably and that the degree of force used was not excessive. *Id.* at 895–96.

A contrary result was reached in *People v. Kraft,* 3 Cal.App.3d 890, 84 Cal.Rptr. 280 (1970), where the defendant refused to submit to a blood test and resisted being taken into the hospital. Without provocation, one of the officers struck the defendant on the cheek with a closed fist. Later, as officers tried to carry or lead the defendant to a bed in an examination room, the defendant fell or was pushed to the floor. On the floor, police immobilized him while a physician withdrew blood. One officer testified that he held the defendant's arm while also holding a scissor lock on the defendant's legs. An officer acknowledged that the defendant's behavior had not been aggressive but was "defensive." The court concluded that the officers' "strong-arm" tactics were "aggressive beyond all need," and exceeded the limits of permissible force. *Id.* at 285–86.

Suppression was also ordered in *State v. Ravotto,* 169 N.J. 227, 777 A.2d 301 (2001). In that case, the defendant resisted a blood draw, saying that he was afraid of needles, but offered to submit to a breath test. The officers strapped the defendant to a table while a nurse drew his blood. The reviewing court said that the defendant's fear of needles and his willingness to take a breath test were relevant to the inquiry into the reasonableness of the officers' conduct, and held that the force used by the officers was unreasonable under the circumstances. *Id.* at 310.

In the present case, it is our conclusion that the force used to draw a blood sample from Worthington did not violate constitutional standards. Worthington was described as "very combative." All of the evidence showed that the force used was necessary to restrain him so that a blood sample could be taken. The police did not strike Worthington or otherwise engage in violence or physical abuse. Worthington refused any less intrusive testing method,

such as a breath test. We agree with the district court's conclusion that the force used was reasonable.

■ Worthington next argues that the forcible blood draw should be deemed unnecessary, and therefore unreasonable, because officers had sufficient evidence to convict him of DUI without a blood test. Worthington cites officers' observations that his speech was slurred, that he had difficulty maintaining his balance when removed from his vehicle, that there was an odor of alcohol coming from his breath and that a partially consumed bottle of wine and can of beer were found in his vehicle. The arresting officer was also aware that a truck driver had observed Worthington driving erratically. According to Worthington, because this evidence would have been sufficient for a conviction, the officers' use of physical force to obtain a blood sample was unreasonable.

■ We disagree. First, it is not the prerogative of a defendant to determine what evidence the State may gather to support his prosecution. *See Halen v. State*, 136 Idaho 829, 833, 41 P.3d 257, 261 (2002). Second, Idaho Code § 18–8004C, one of the statutes under which Worthington was charged, gives importance to blood alcohol concentration evidence even if there is other overwhelming evidence that the defendant was driving under the influence. Section 18–8004C pre-

scribes enhanced penalties for persons convicted of either misdemeanor or felony DUI if their blood alcohol concentration was 0.20 or higher. The element of excessive alcohol concentration must be proven by a test, for the statute refers to persons who have "an alcohol concentration of 0.20 ... *as shown by an analysis of [their] blood, breath or urine* ...." I.C. § 18–8004C(1), (2) (emphasis added). Accordingly, there is no merit in Worthington's argument that the forcible blood draw was unreasonable because it was unnecessary for his prosecution.

■ Finally, Worthington contends that the blood test should be suppressed because, under I.C. § 18–8002(6),[1] the police officer did not have authority to order the technician to perform the blood draw. Section 18–8002(6) provides protection from civil or criminal liability for any healthcare professional who administers an evidentiary test for the presence of drugs or alcohol at the request of a law enforcement officer. Subsection (b) of § 18–8002(6) empowers law officers to order healthcare professionals to withdraw a blood sample from an individual suspected, on probable cause, of having committed certain specified offenses involving the use of alcohol. Subsection (e)(i) of § 18–8002(6) creates an exception to the officer's authority to order a blood draw. It permits hospital personnel to delay or terminate an

---

1. I.C. § 18–8002(6) provides in part:

No hospital, hospital officer, agent, or employee, or health care professional licensed by the state of Idaho ... shall incur any civil or criminal liability for any act arising out of administering an evidentiary test for alcohol concentration or for the presence of drugs or other intoxicating substances at the request or order of a peace officer in the manner described in this section and section 18–8002A, Idaho Code ...

. . . .

(b) A peace officer is empowered to order an individual authorized in section 18–8003, Idaho Code, to withdraw a blood sample for evidentiary testing when the peace officer has probable cause to believe that the suspect has committed any of the following offenses:

(i) Aggravated driving under the influence of alcohol, drugs or other intoxicating substance as provided in section 18–8006, Idaho Code;

(ii) Vehicular manslaughter as provided in subsections (3)(a), (b) and (c) of section 18–4006, Idaho Code;

(iii) Aggravated operating of a vessel on the waters of the state while under the influence of alcohol, drugs or other intoxicating substances as provided in section 67–7035, Idaho Code; or

(iv) Any criminal homicide involving a vessel on the waters of the state while under the influence of alcohol, drugs or other intoxicating substances.

. . . .

(e) The withdrawal of the blood sample may be delayed or terminated if:

(i) In the reasonable judgment of the hospital personnel withdrawal of the blood sample may result in serious bodily injury to hospital personnel or other patients; or

(ii) The licensed health care professional treating the suspect believes the withdrawal of the blood sample is contraindicated because of the medical condition of the suspect or other patients.

ordered blood draw if, in their reasonable judgment, the procedure might result in serious bodily injury to hospital personnel or other patients. Worthington points out that the lab technician who drew his blood had asked whether she must do so because, due to Worthington's combativeness, she felt it created a risk to herself; but she was told by an officer that, "since it was a felony, he had to get his blood drawn." Worthington correctly notes that the officer had no authority to compel the technician to continue with the blood draw, both because she was entitled to decline under I.C. § 18–8002(6)(e)(1) and because Worthington was not suspected of having committed any of the offenses enumerated in § 18–8002(6)(b).

This observation is of no consequence for Worthington's suppression motion, however, for no right of Worthington's was infringed. If the officer exceeded his authority, the aggrieved party was the lab technician who received the unlawful order, not Worthington who, by virtue of the exigent circumstance exception to the warrant requirement and Idaho's implied consent statute, had no legal entitlement to refuse or prevent the blood draw. Even when a constitutional violation has occurred, suppression of evidence is not required unless it was the defendant's own rights that were infringed. That is, a defendant may not raise a violation of a third party's rights as a basis for the suppression of evidence. *See Rakas v. Illinois,* 439 U.S. 128, 150, 99 S.Ct. 421, 434, 58 L.Ed.2d 387, 405 (1978); *State v. Ryan,* 117 Idaho 504, 506, 788 P.2d 1327, 1329 (1990); *State v. Foldesi,* 131 Idaho 778, 780, 963 P.2d 1215, 1217 (Ct.App.1998).

## CONCLUSION

Worthington has demonstrated no error in the district court's determination that the forcible withdrawal of a blood sample from Worthington was lawful. Therefore, the order of the district court denying Worthington's motion to suppress the blood test evidence is affirmed.

Chief Judge PERRY and Judge Pro Tem. JUDD concur.