62 P.3d 214

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Palmer BARRETT, Defendant–Appellant.**

No. 27791.

Court of Appeals of Idaho.

Jan. 7, 2003.

Belnap Curtis, PLLC, Boise, for appellant. R. Wade Curtis argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

GUTIERREZ, Judge.

Palmer Barrett appeals from his judgment of conviction, arguing that the district court erred in denying his motion to suppress drug evidence seized from his house. The district court ruled that exigent circumstances and community care-taking function exceptions to the warrant requirement justified police officers' warrantless entry of Barrett's house after he was found collapsed on a neighbor's porch and unable to communicate. We affirm on an exigent circumstances ground.

I.

FACTUAL AND PROCEDURAL SUMMARY

In the afternoon of June 1, 2000, Anthony Williams heard a crash and grunting noises and found Barrett, his neighbor from an adjacent house, on the porch on his knees, unable to stand, and trying to open the door. Although Williams shouted to try to find out what was wrong, Barrett indicated that he could not hear and that he may have been having a heart attack. Williams, a health care professional, called 911.

Sergeant Dwight Hosford of the Meridian Police Department responded to the 911 call, which the dispatcher described as a "medical assist" with "subject down." Driving to the scene, Hosford observed that the front door of what turned out to be Barrett's house was wide open. Hosford contacted Barrett and Williams on Williams' porch, but Barrett was incoherent and curled up in a fetal position. Hosford attempted to communicate with Barrett, but Barrett did not respond to any of Hosford's inquiries, including his inquiry as to whether other persons were in Barrett's house. Williams told Hosford that Barrett's

wife, his two children, and sometimes others, lived with Barrett, and that he had not seen Barrett's wife and children all day.

After the paramedics had arrived, Hosford and Corporal Rick Murphy proceeded to Barrett's house and identified themselves loudly several times, asking any persons inside to come to the front door, but getting no response and hearing nothing from inside. Hosford and Murphy then entered Barrett's house. Finding no one upstairs, Hosford and Murphy went downstairs. Hosford entered the kitchen where he observed and then seized drug paraphernalia and black tar heroin in plain view on an island counter. Barrett was transported to the hospital where it was determined that he had been suffering from a heroin overdose. Barrett was charged with possession of a controlled substance, I.C. § 37–2732(c).

Barrett filed a motion to suppress all physical evidence and statements taken from him on the grounds that such evidence was obtained in violation of his constitutional protections against unreasonable searches. The parties stipulated to the consideration of the preliminary hearing transcript with respect to Barrett's motion to suppress. Barrett also filed a motion *in limine* to exclude his statements to medical personnel. Deferring on Barrett's motion *in limine* until trial, the district court heard Barrett's suppression motion. There, Hosford repeatedly testified that his sole purpose for entering Barrett's house was to determine if Barrett's wife, children, or any other persons therein needed emergency medical assistance. Hosford also testified that Barrett's inability to respond prompted his concern that others might be in need of such assistance in the residence. Hosford further swore to his belief that at the time he could have taken no other steps, apart from entering Barrett's house, to determine whether others inside the house needed emergency medical assistance. The district court denied Barrett's suppression motion and ruled that the officer's entry of Barrett's home was lawful under the exigent circumstances and community care-taking function exceptions to the Fourth Amendment warrant requirement.

Barrett subsequently entered a conditional *Alford* plea [1] but reserved his right to appeal the denial of his motion to suppress. The district court entered judgment and imposed a two-year sentence, with one year determinate, and Barrett timely appeals.

## II.

## ANALYSIS

Barrett argues that the district court abused its discretion in denying his motion to suppress the evidence found in his house. On review of a decision to grant or deny a motion to suppress evidence, the Court employs a split standard of review. The Court will defer to the trial court's findings of fact unless they are clearly erroneous. *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). However, the Court exercises free review over the application of constitutional standards to those facts. *Id.* Where, as here, the parties do not dispute the factual findings, we limit our review to whether the actions taken were constitutionally permissible.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *State v. Sailas*, 129 Idaho 432, 434, 925 P.2d 1131, 1133 (Ct.App. 1996). The reasonableness standard imposed by the Fourth Amendment requires that the nature of the intrusion upon the individual's privacy interest be balanced against the public need and governmental interest promoted by the action taken. *State v. Godwin*, 121

Idaho 517, 519, 826 P.2d 478, 480 (Ct.App. 1991), *affirmed by* 121 Idaho 491, 826 P.2d 452 (1992). The state bears the burden of showing reasonableness, which we evaluate within the totality of the circumstances. *State v. Pearson–Anderson*, 136 Idaho 847, 851, 41 P.3d 275, 279 (Ct.App.2001); *Sailas*, 129 Idaho at 434, 925 P.2d at 1133.

An individual's privacy interest in his home is fundamental to the protections guaranteed by the Fourth Amendment, and invasions of that privacy interest accordingly are subject to heightened constitutional review. *Sailas*, 129 Idaho at 434, 925 P.2d at 1133. Where an officer enters a residence without a warrant, such entry is presumptively unreasonable. *Id.* Certain exceptions, however, may render a warrantless entry legally permissible.

### A. Exigent Circumstances

The exigent circumstances exception justifies a warrantless search when the facts known to the police at the time of the entry, along with reasonable inferences drawn thereupon, demonstrate a "compelling need for official action and no time to secure a warrant." *Pearson–Anderson*, 136 Idaho at 849, 41 P.3d at 277; *Sailas*, 129 Idaho at 434, 925 P.2d at 1133. Under this objective standard, we determine whether those facts and inferences would "warrant a man of reasonable caution in the belief that the action taken was appropriate." [2] *Pearson–Anderson*, 136 Idaho at 850, 41 P.3d at 278.

1. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

2. At oral argument, Barrett relied upon an exigent circumstances standard as set forth in *State v. Rusho*, 110 Idaho 556, 559–60, 716 P.2d 1328, 1331–32 (Ct.App.1986). *Rusho* first established that the exigent circumstances exception encompasses those "fact patterns sufficient to excuse an officer from the requirement of obtaining a warrant to conduct a search for which he has probable cause." *Id.* at 559, 716 P.2d at 1331. Citing *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), *Rusho* then stated, "Probable cause and a compelling emergency ... must be shown." *Rusho*, 110 Idaho at 559, 716 P.2d at 1331. This requirement for probable cause and a compelling emergency may lead to confusion as to the law stated in *Mincey*, 437 U.S. at 389–91, 98 S.Ct. 2408 and in *Rusho* because

"probable cause" is more commonly understood as a term of art defining the standard for the issuance of search warrants. *Rusho*, however, clarifies its use of the term "probable cause," stating "such warrantless and nonconsensual searches are permissible only if there is probable cause to believe that an intruder exists and it reasonably appears that persons or property are in immediate danger." *Id.* at 560, 716 P.2d at 1332. The reasonableness standard we articulate in the instant appeal appropriately encompasses *Rusho's* use of the terms "probable cause" and "compelling emergency," and we disapprove a reading of *Rusho* as establishing a different standard in cases of claimed exigent circumstances. "Probable cause" as used in defining the standard for the issuance of search warrants is not applicable where the reason for the search is not to investigate a possible crime.

The risk of danger to police officers or other persons either inside or outside the dwelling constitutes such an exigency justifying a warrantless entry. *Id.* at 849–50, 41 P.3d at 277–78. Thus, although we scrutinize claims of exigency to ensure that they do not operate as mere pretexts for otherwise warrantless and unlawful entries and searches, we also strive to avoid "second-guessing police decisions made in legitimate belief that life may very well be at stake." *Id.* at 849, 41 P.3d at 277. Finally, while police officers are carrying out legitimate emergency activities, they may seize any evidence in plain view. *Mincey,* 437 U.S. at 390, 98 S.Ct. 2408. Thus, we consider whether there was a compelling need for official action in the instant case.

In *State v. Bower,* 135 Idaho 554, 556–57, 21 P.3d 491, 493–94 (Ct.App.2001), we affirmed the district court's denial of a suppression motion where police entered a defendant's motel room without a warrant. Bower resided in the room with his four-year-old daughter. After the little girl was found crying in the parking lot and stated that something was wrong with her father, paramedics and fire officials arrived to find Bower unconscious and barely breathing. After being called by a fireman, police entered Bower's room where they observed and seized drug evidence in plain view in an open drawer. Bower had regained consciousness and refused further treatment from the paramedics, but then admitted his drug overdose to the police. Although *Bower* presented narrower questions than in the instant case, we ruled that the police were justified in entering Bower's motel room because exigent circumstances continued to exist at the time of their entry and because the police entered the premises within the scope of that exigency. *Id.* at 559–60, 21 P.3d at 496–97.

Here, the police officers responded to a 911 call identifying a medical emergency with a man down. When Sergeant Hosford approached the scene, he noted that the door of a nearby house was standing open. Upon his arrival, Hosford encountered Barrett in obvious distress, unable to stand, incoherent, unable to hear, and non-communicative. Moreover, Barrett had left his home and apparently struggled to reach his neighbor's house in a desperate search for emergency medical assistance. Despite his inquiries to the unhearing and non-communicative Barrett, Hosford could not determine the nature and cause of the medical condition that had driven Barrett from his house to seek help from neighbor Williams.

Williams told Hosford that Barrett was married and lived with his wife and two daughters and with perhaps other persons in Barrett's house, the same house at which one officer had noted the front door standing wide open. Williams told Hosford that, although it was after one o'clock in the afternoon, he had not seen Barrett's wife or children all day. Concerned that Barrett's wife or children or other persons inside the house may have been in need of emergency medical assistance, the officers proceeded to Barrett's house. At the closed screen door of Barrett's house, the officers identified themselves repeatedly in loud voices through the open front door, imploring any occupants of the house to come to the door. No one appeared and no noise issued from inside the house. Fearing that persons inside the house may have been unable to respond, the officers entered the house. The officers first searched for persons in the upstairs portions of the house. Finding no one upstairs, the officers then proceeded to search the downstairs where they likewise found no persons, but where Hosford observed the drug evidence in plain view in the kitchen.

■ Under the totality of the facts and circumstances as known to the police at the time that they entered Barrett's house, and reasonable inferences drawn thereupon, we conclude that there existed a compelling need for the police to enter. The state has satisfied its burden to show that the risk of danger to persons inside that dwelling, as then reasonably perceived by the police, constituted an exigency justifying that warrantless entry. Here, the state's claim of exigency is not a mere pretext for an unlawful entry and search, but the police officers legitimately believed, particularly in view of their inability to discern the cause of the medical condition affecting Barrett, that the life of any occupants of Barrett's house may very

well have been at stake. Because the police officers were still in the process of searching downstairs for persons in need of assistance, the exigent circumstances had not ceased to exist when Hosford observed the drug evidence in plain view in the kitchen.

Accordingly, we conclude that the district court did not err in denying Barrett's suppression motion on the ground that exigent circumstances justified the warrantless entry of his house. Although Idaho jurisprudence also treats the emergency aid doctrine within the community care-taking function exception, we need not examine the district court's decision under that exception, having now affirmed that decision on an exigent circumstances ground. *See, e.g., State v. Maddox,* 137 Idaho 821, 54 P.3d 464, 468 (Ct.App. 2002); *State v. Fry,* 122 Idaho 100, 104, 831 P.2d 942, 946 (Ct.App.1991).

## B. Other Issues on Appeal

Barrett further contends that the district court abused its discretion in failing to exclude his statements about his drug addiction treatment to his treating physician on the ground that the physician did not meet the definition of "psychotherapist" under Idaho Rule of Evidence 503(a)(4). The court, however, did not rule on Barrett's motion *in limine* in which he raised this issue, but rather deferred its decision thereupon until trial. Because Barrett ultimately entered an *Alford* plea, no trial was ever conducted. Having not been decided by the district court, this issue is not ripe for review. *Osmunson v. State,* 135 Idaho 292, 17 P.3d 236 (2000).

Barrett also claims that the court abused its discretion by failing to suppress evidence of Barrett's blood test results where medical personnel obtained that blood for treatment purposes. Although his brief incorrectly attributes his request to suppress evidence of his blood test results to his deferred motion *in limine,* Barrett made this request in his denied motion to suppress. The district court's ruling on this motion to suppress is properly before us, but Barrett offers no argument or authority and thus waives this issue on appeal. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

Finally, Barrett's argument that the district court abused its discretion in deferring until trial its ruling on his motion *in limine* is without merit and, also being without argument or authority, is waived on appeal. *See* I.C.R. 12(e); *Zichko,* 129 Idaho at 263, 923 P.2d at 970.

### III.

### CONCLUSION

Because we conclude the district court did not err in denying Barrett's motion to suppress the drug evidence seized in his residence under the exigent circumstances exception, we affirm Barrett's judgment of conviction.

Chief Judge LANSING and Judge Pro Tem JUDD concur.