# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 39022

| | |
|---|---|
| STATE OF IDAHO, | 2012 Unpublished Opinion No. 746 |
| Plaintiff-Respondent, | Filed: November 29, 2012 |
| v. | Stephen W. Kenyon, Clerk |
| STEFAN JAMES PFEIFFER, | THIS IS AN UNPUBLISHED |
| Defendant-Appellant. | OPINION AND SHALL NOT BE CITED AS AUTHORITY |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Thomas F. Neville, District Judge.

Order denying motion to suppress, <u>affirmed</u>; order denying Idaho Criminal Rule 35 motion, <u>affirmed</u>.

Stephen D. Thompson, Ketchum, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

---

PERRY, Judge Pro Tem

Stefan James Pfeiffer appeals from his judgment of conviction, entered following his conditional plea of guilty to trafficking in methamphetamine or amphetamine, Idaho Code § 37-2732B(a)(4). Specifically, Pfeiffer challenges the district court's orders denying his motion to suppress and denying his Idaho Criminal Rule 35 motion. We affirm.

## I.

## FACTS AND PROCEDURE

Dispatch notified officers of a 911 call from an individual at a hotel making irrational statements and threats. Officer Durbin, Corporal Winters, and Officer Parker responded and found the subject, who was later identified as Thomas Massey. Massey claimed that people put a "hit" out on his life and said that if anybody tried to kill him he would shoot them or run over them with his car. Massey further claimed that the person who put the hit on him was inside Massey's hotel room. Officer Durbin was concerned for the safety of the person inside the hotel

1

room, and sent Corporal Winters to the room to determine if the person needed assistance. Corporal Winters pounded on the door of the room for approximately fifteen to twenty minutes. His knocks were so loud that four or five hotel guests opened their doors to see what was going on. However, nobody inside the room responded to the knocking.

Officer Parker and Corporal Winters obtained a key for the room from hotel management and opened the door. As the door swung open, they saw a person, later identified as Pfeiffer, laying on a bed with his back to them. Upon entering the room, the officers repeatedly yelled at Pfeiffer in an attempt to arouse him. Pfeiffer did not respond to the officers' commands. Pfeiffer finally awoke, but the officers were unable to ascertain his well-being, or any potential threats to their own safety, because Pfeiffer's face, chest, and hands were not visible. The officers noticed a clear plastic baggie containing a white substance in plain view on the bed next to Pfeiffer. Once Pfeiffer became alert enough to understand the officers' commands, the officers removed him from the room. Thereafter, a narcotics detective arrived and received consent from Massey to search the hotel room. The officers reentered the room and collected drugs and drug paraphernalia found within the room.

After being charged with trafficking in methamphetamine or amphetamine, Pfeiffer filed a motion to suppress the evidence obtained during the search, claiming the officers illegally entered the room. The district court denied the motion, finding that the search was reasonable to ensure the welfare of Pfeiffer. Pfeiffer subsequently entered a conditional guilty plea and the district court imposed a unified sentence of twelve years with three years determinate. Pfeiffer then filed a Rule 35 motion, which the district court denied. Pfeiffer timely appeals.

## II.

## ANALYSIS

### A. Motion to Suppress

Pfeiffer claims the district court erred in finding that it was reasonable for police officers to enter the hotel room pursuant to their community caretaking function. Instead, Pfeiffer alleges the district court should have found the entrance to be an unreasonable, warrantless search and seizure, and therefore all evidence obtained by the police officers should have been suppressed.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

2

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. A search may be reasonable under the officer's community caretaking function. *State v. Cutler*, 143 Idaho 297, 302, 141 P.3d 1166, 1171 (Ct. App. 2006). The community caretaking function arises from the duty of police officers to help citizens in need of assistance and is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *Cutler*, 143 Idaho at 302, 141 P.3d at 1171; *State v. Maddox*, 137 Idaho 821, 824, 54 P.3d 464, 467 (Ct. App. 2002). In analyzing community caretaking function cases, Idaho courts have adopted a totality of the circumstances test. *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997); *State v. Schmidt*, 137 Idaho 301, 303, 47 P.3d 1271, 1273 (Ct. App. 2002). The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances. *Wixom*, 130 Idaho at 754, 947 P.2d at 1002; *Schmidt*, 137 Idaho at 303-04, 47 P.3d at 1273-74. Reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *State v. Godwin*, 121 Idaho 491, 495, 826 P.2d 452, 456 (1992); *Schmidt*, 137 Idaho at 304, 47 P.3d at 1274.

In this instance, the district court found that the community caretaking function applied. Specifically, the district court found that it was reasonable for the police: (1) to be concerned that the person in the room was not responding to their pounding on the door; (2) to believe that someone in the room may have been in need of immediate assistance; and (3) to identify and remove the person in the room. Further, the district court found that the public interest in ascertaining the welfare of the occupant in the room outweighed the degree and nature of the intrusion on Pfeiffer's privacy.

Pfeiffer asserts that the community caretaking function was not applicable because the officers had no evidence that he was in need of assistance. Further, he alleges that the officers

made no observations, other than Pfeiffer's failure to respond to their knocking on the door, to suggest a need to exercise the community caretaking function. To support his argument, Pfeiffer directs this Court to its decision in *Schmidt*. In that case, a police officer investigated a vehicle stopped in a pull-out area. The officer had not received notice from dispatch that an emergency involving a vehicle was occurring, had not received notice of a stranded vehicle, had not observed debris or skid marks on the roadway, and had not observed anything about the vehicle's occupants to lead him to believe they required assistance. We determined it was unreasonable for the officer to believe the occupants needed assistance; therefore, the community caretaking function was inapplicable. *Schmidt*, 137 Idaho at 304, 47 P.3d at 1274.

However, *Schmidt* is factually distinguishable from the instant case. First, the officers in this case responded to an emergency situation, a 911 call from an irrational individual. Second, the officers found evidence that the emergency was ongoing, as Massey threatened violence against the person inside his hotel room. Third, the evidence was substantiated by the officer's pounding on the door and not receiving any response from the person inside. These facts create a different circumstance than that of an officer recognizing a vehicle stopped in a pull-out area. Therefore, we determine that *Schmidt* is not apposite.

The State argues that this case is factually analogous to *State v. Barrett*, 138 Idaho 290, 294-95, 62 P.3d 214, 218-19 (Ct. App. 2003). In that case, police responded when a neighbor called 911 to report that a man collapsed on his porch in need of medical attention. When police arrived, Barrett was unable to communicate with them and they were unable to determine the cause of his medical condition. After being notified that Barrett had other family members residing in the house, police entered Barrett's house to determine if medical assistance was required for the unaccounted-for family members. We determined from the totality of the circumstances that it was reasonable for the police to enter the house because police legitimately believed "that the life of any occupants of Barrett's house may very well have been at stake." *Id.* at 294-95, 62 P.3d at 218-19.[1]

---

[1] Idaho case law regarding the community caretaking function focuses largely on searches and seizures of vehicles. Searches of houses and hotel rooms have generally been analyzed by the appellate courts under the exigent circumstances exception. As this case is factually akin to those cases discussing exigent circumstances, we look at those cases for guidance.

Another case discussing the exigent circumstances exception to the warrant requirement that we find to be instructive is *State v. Pearson-Anderson*, 136 Idaho 847, 41 P.3d 275 (Ct. App. 2001). In that case, police were dispatched to investigate a 911 hang-up call. When police arrived, they found Pearson-Anderson wrestling on the ground with her boyfriend. Pearson-Anderson reported that she had made the 911 call because her boyfriend was preventing her from leaving the house. She said that her boyfriend hung up the phone before she could speak. Police discovered that Pearson-Anderson and her boyfriend were fighting because her boyfriend gave another woman a key to the house. It was believed that the other woman was at the house earlier, but was no longer there. Police entered the home to determine if any third persons were present and in need of assistance. We determined that the totality of the circumstances, the 911 hang-up call, the observations of violence made by police upon arrival, and the possibility of third party involvement, made it reasonable for police to enter the house without a warrant. *Id.* at 850, 41 P.3d at 278.

In this case, we determine that it was reasonable, based on the totality of the circumstances, for the officers to enter the hotel room. As the officers investigated the 911 call, they perceived a threat to the occupant of the hotel room and determined that the welfare of the person in the room needed to be ascertained. The person inside the room was unable to respond to repeated loud knocks on the door. Based upon the threat made by Massey towards Pfeiffer, Massey's statement that Pfeiffer was inside the room, and Pfeiffer's unresponsiveness to the repeated loud knocks of the officers, it was reasonable for police to enter the room pursuant to the community caretaking function. The officers had a duty to ensure the welfare and well-being of Pfeiffer, and they performed that duty in the least invasive manner possible. Therefore, the district court did not err in denying Pfeiffer's motion to suppress.

**B.     Rule 35 Motion for a Reduction of Sentence**

Pfeiffer asserts that the district court abused its discretion when it denied the I.C.R. 35 motion. A motion for reduction of sentence under Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our

review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984).

Pfeiffer provided no new or additional information in support of his motion. Instead he argues that, in light of his age and lack of prior felonies, his sentence was excessive as initially imposed. The mandatory minimum sentence for violating I.C. § 37-2732B(a)(4) is three years imprisonment, and the maximum sentence is life imprisonment. The district court considered the objectives of sentencing and considered Pfeiffer's age and criminal history when making its determination. Based on the foregoing, we determine that the district court properly sentenced Pfeiffer within the appropriate statutory limits. Therefore, we determine that the district court did not abuse its discretion when it denied Pfeiffer's Rule 35 motion.

## III.

## CONCLUSION

The district court properly denied Pfeiffer's motion to suppress and Pfeiffer's Rule 35 motion. Accordingly, the district court's orders denying his motion to suppress and his Rule 35 motion are affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**