IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 40500

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 440 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 4, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| CHRISTOPHER MICHAEL FOOTE, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction for possession of a controlled substance, vacated.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Jeffrey Brownson argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

---

MELANSON, Judge

Christopher Michael Foote appeals from his judgment of conviction for possession of a controlled substance. For the reasons set forth below, we vacate the judgment of conviction.

I.

FACTS AND PROCEDURE

In February 2012, officers responded to a call from a landlord that a tenant (Foote), who lived upstairs, was causing a disturbance. The landlord reported the tenant was making loud noises and yelling about not being able to find his medication. Officers responded to the landlord's residence and the landlord let the officers inside his residence. The landlord led officers to a common stairwell which led to the rear, inside entrance to Foote's apartment. Officers knocked on Foote's door and Foote answered. When officers requested that Foote come downstairs to talk, Foote put his hand into his pocket and began walking back into his apartment. An officer followed Foote into the apartment and observed Foote remove a marijuana pipe from

his pocket. The officer also observed Foote place the pipe into a dresser drawer. Inside the drawer, the officer observed a light bulb. Based on the officer's training and experience, the officer recognized the light bulb as a device used to smoke methamphetamine. The officer directed Foote to sit on the bed and seized the marijuana pipe and light bulb. Inside the light bulb, the officer discovered residue that tested presumptively positive for methamphetamine.

The state charged Foote with possession of a controlled substance. I.C. § 37-2732(c)(1). Foote moved to suppress the evidence, asserting a violation of his Fourth Amendment rights. The district court denied the motion. Thereafter, Foote agreed to plead guilty, reserving his right to challenge the denial of his motion to suppress. The district court sentenced Foote to a unified term of six years, with a minimum period of confinement of two years; suspended the sentence; and placed Foote on probation for a period of five years. Foote appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Foote argues the district court erred in determining exigent circumstances justified the entry into his apartment without a warrant. The state responds that concerns for officer safety and the safety of Foote justified the entry.[1]

---

[1] The state also contends this Court should expand the exigent circumstances doctrine to permit officers to enter a residence without a warrant to protect property. However, this issue was not raised below and we decline to address it on appeal. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992) (generally, issues not raised below may not be considered for the first time on appeal).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Without a warrant, searches and seizures within a home are presumptively unreasonable. *Kentucky v. King*, 563 U.S. ___, ___, 131 S. Ct. 1849, 1856 (2011); *State v. Smith*, 144 Idaho 482, 485, 163 P.3d 1194, 1197 (2007). The state can overcome this presumption by showing the government conduct fell within one of the exceptions to the warrant requirement. *King*, 563 U.S. at ___, 131 S. Ct. at 1856. One such exception exists where exigent circumstances "make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). A law enforcement officer's reasonable belief of danger to the police or to other persons, inside or outside the dwelling, is one type of exigency that may justify a warrantless entry. *State v. Araiza*, 147 Idaho 371, 375, 209 P.3d 668, 672 (Ct. App. 2009). Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); *Araiza*, 147 Idaho at 375, 209 P.3d at 672. The officer's subjective intent is irrelevant; instead, the state has the burden to show an officer has an objectively reasonable basis for believing a person within the house needs immediate aid. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009).

**A.    Safety of Foote**

Idaho appellate courts have previously addressed cases where the circumstances are such that immediate entry into a residence without a warrant is justified in order to protect the safety of individuals within. *See Araiza*, 147 Idaho at 376-77, 209 P.3d at 673-74; *State v. Barrett*, 138 Idaho 290, 294, 62 P.3d 214, 217 (Ct. App. 2003). In *Araiza*, officers observed an unidentified man outside a residence after dark. The man appeared to be attempting to enter the residence, or leave the residence, through a window. Consequently, one of the officers knocked on the door and the resident, an elderly woman, answered. Upon being informed of the officers' concerns, the elderly woman informed the officers the man's name was Roland and that he was now inside. The man came to the door, identified himself as Roland Araiza, and gave the officers his social security number and date of birth. Araiza went back inside the residence to retrieve clothing, shutting and locking the door behind him. A check of the information Araiza provided did not produce a record of such an individual.

3

After officers were unable to confirm Araiza's identity, none of the occupants would open the door, answer the phone, or respond to knocking on the windows from the officers. The officers' concerns heightened when another woman arrived at the scene. The woman identified herself as the elderly woman's daughter, denied recognizing Araiza's name, and stated that there should be no one else in the residence aside from the elderly woman and two young children. Additionally, a man, later identified as the elderly woman's grandson, arrived at the scene and also denied recognizing Araiza's name and stated no other adult should be inside except his grandmother. Officers then entered the home. This Court concluded exigent circumstances--namely the legitimate concerns for the elderly woman and the children--validated the warrantless entry because Araiza's identity remained a mystery, the officers attempted repeatedly to contact the occupants of the residence without success, and several family members expressed concern that an unauthorized individual was inside the home. *Id.* at 375-76, 209 P.3d at 672-73.

Likewise, in *Barrett*, 138 Idaho 290, 62 P.3d 214, this Court also determined exigent circumstances existed justifying warrantless entry into a residence. In that case, Barrett's neighbor heard a crash and grunting outside. The neighbor found Barrett on the porch on his knees and Barrett indicated that he may have had a heart attack. The neighbor called 911. When an officer arrived at the scene, Barrett's front door was wide open. Barrett lay incoherent outside his neighbor's home. Barrett did not respond to any of the officers' inquiries, including whether there were other persons inside his residence. The neighbor indicated that other family members lived in the house, but that he had not seen them all day. Officers loudly identified themselves multiple times, asking any persons inside to come to the front door. When no one responded and officers heard nothing from inside, the officers entered the residence and found drugs and paraphernalia in plain view. We concluded exigent circumstances--namely the risk that others were inside the residence and may have been unable to respond--justified the warrantless entry, given the medical emergency that Barrett was enduring and the officers' inability to contact anyone inside the house when they had information that other family members lived there. *Id.* at 294-95, 62 P.3d at 218-19.

In contrast to *Barrett* and *Araiza*, the situation here did not involve an emergency or exigent circumstances justifying a warrantless entry. The circumstances found by the district court are as follows. Police dispatch received a call from a landlord reporting a disturbance from a tenant in an upstairs apartment. The landlord also expressed concern about damage being done

4

to the apartment. Officers responded and were let into the landlord's residence. Officers then traversed an inside stairwell and knocked on an inside door to Foote's apartment and Foote answered. Foote appeared sweaty, slightly disoriented, and disheveled. Officers requested that Foote come downstairs, at which point Foote put his hand into his pocket and retreated into his apartment. An officer followed Foote inside and subsequently observed Foote take a marijuana pipe out of his pocket and place it into a drawer with a light bulb used for smoking methamphetamine. Officers then detained and arrested Foote.

At the time officers entered Foote's apartment, there was no concern for any third parties. Further, the officers did not observe any readily apparent signs of a potential medical emergency regarding Foote. The officer's description of Foote as disheveled, sweating, and slightly disoriented could be explained in a multitude of ways--none raising concern of illegal activity or a medical emergency. There was no indication that Foote was incoherent, unable to care for himself, or posed a danger to himself. The state also cites to testimony that Foote was apparently distraught over not being able to find his medication. While the district court did not address this in its findings of fact, even taking it into consideration, this additional information does not demonstrate an ongoing medical emergency with Foote justifying a warrantless entry by officers.

## B.    Officer Safety

Turning to the issue of officer safety, the district court relied upon *Ryburn v. Huff*, ___ U.S. ___, ___, 132 S. Ct. 987, 988-89 (2012) in concluding officers were justified in entering Foote's apartment without a warrant. In *Ryburn*, the United States Supreme Court faced a claim that officers committed a civil rights violation by entering a residence without a warrant or justification for a warrantless entry. There, officers responded to a report that a juvenile threatened to "shoot up" his school. The juvenile had a history of being bullied and had been absent from school for two days. Officers responded to the juvenile's residence and knocked on the door, but no one responded. An officer then called the house, but there was no answer. The officer finally called the mother's cell phone and she answered. She informed the officer that she and her son (the juvenile) were inside the home. When the officer requested that they come outside to talk, she hung up the phone. However, after a couple of minutes, the mother and son came out onto the front porch to speak with officers.

While the officers spoke with the mother and son, one officer inquired whether there were any firearms inside the home. The mother responded by immediately turning and running

5

into the home. Officers entered the home behind her. The mother and her husband (the Huffs) subsequently filed suit under 42 U.S.C. § 1983 for a violation of their Fourth Amendment rights. The Court held reasonable officers could have come to the conclusion that the Fourth Amendment permitted them to enter the Huff residence if there was an objectively reasonable basis for fearing that violence was imminent and that a reasonable officer could have come to such a conclusion. *Ryburn*, ___ U.S. at ___, 132 S. Ct. at 992.

The circumstances at issue here are distinguishable from those in *Ryburn*. While the officers in *Ryburn* were investigating a threat of a school shooting, here the officers were investigating a disturbance where a tenant was making loud noises. Further, while the retreat into the residence in *Ryburn* occurred in response to an inquiry relating to firearms, here the retreat into the residence occurred in response to the officers' request that Foote come downstairs. Foote was under no obligation to comply with this request. Also, there was no indicia of a weapon or threat here. The officers indicated Foote only wore gym shorts, but did not testify to observing any type of bulge that would suggest a weapon or testify that Foote moved in a furtive manner. Moreover, Foote did not lunge towards the officers, but rather, turned away and retreated as he reached into his pocket.

This Court recognizes the dangers officers face in their everyday encounters. Whether the officer is engaging in a traffic stop, talking with individuals on the street or responding to a disturbance at a home, there will always be the specter of danger in the background. However, in the context of entering a residence, an objectively reasonable fear of imminent violence is required before an officer can enter a home without a warrant in the name of officer safety. Here, the act of Foote putting his hand into his pocket and turning away did not provide officers with that objectively reasonable basis.

At the core of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). In this case, officers denied Foote this right. The totality of the circumstances did not give rise to an objective exigency or emergency justifying warrantless entry for either officer safety or for the safety of Foote. The evidence discovered as a result of this illegal entry must therefore be excluded. *See Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961) (evidence obtained by searches and seizures in violation of U.S. Constitution is inadmissible in state court); *State v. Jenkins*, 143 Idaho 918, 920, 155 P.3d 1157, 1159 (2007) (evidence

obtained in violation of the Fourth Amendment must be excluded from evidence in a criminal prosecution of the person whose rights were violated). Thus, the district court erred in denying Foote's motion to suppress.

**IV.**

**CONCLUSION**

The circumstances in this case did not support an objectively reasonable belief that immediate entry into the home of Foote was necessary for either officer safety or for the safety of Foote. Therefore, the district court erred in denying Foote's motion to suppress. Accordingly, we vacate Foote's judgment of conviction.

Chief Judge GUTIERREZ and Judge GRATTON, **CONCUR.**