**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42461**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Unpublished Opinion No. 696** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: November 5, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STEVEN BRIAN HARRIS,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Jonathan P. Brody, District Judge.

Judgment of conviction and oral order denying motion to suppress, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP; Robyn A. Fyffe, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen and Nicole Schafer, Deputy Attorneys General, Boise, for respondent.

_____

HUSKEY, Judge

Steven Brian Harris appeals from the district court's judgment of conviction and oral order denying his motion to suppress. We affirm both.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On the evening in question, a hotel security guard received a complaint that two patrons, Harris and his fiancée, Heather Heard, were yelling at one another. The security guard observed the couple arguing, approached them, and asked them to stop arguing. Harris and Heard complied. Later in the evening, the security guard again heard the couple arguing in their room with the door open. The security guard called the police to report a domestic disturbance. Two officers arrived on the scene and the security guard reported his observations to the police officers.

1

The officers and security guard approached Harris's hotel room. Through the open door and curtains, they observed Heard laying on the bed and Harris moving about the room. At one point, Harris was handling a cup on a dresser. One of the officers made contact with Harris through the propped-open door, informing him that they were investigating a domestic dispute. Harris explained that he and Heard argued earlier about issues relating to their children and the fact that Heard had not taken her medication for bipolar disorder. The officer instructed Harris to wake Heard so that she could tell her side of the story. To that point, Heard had been "completely unaware" of the officers' presence and was "unresponsive."

Harris then told Heard to wake up. Heard was extremely groggy and semi-responsive. Concerned that Heard was intoxicated or had a head injury, one officer entered the room and ordered Heard to get up so the officer could speak with her. Upon entering the room, the officer observed that the cup on the dresser contained two syringes soaking in liquid. The officer asked Heard to come outside and speak with him, and she began to get up. As Heard got up, the officer observed a small plastic bag containing a substance, later identified as methamphetamine, fall from her person.

During his conversation with Heard, the officer observed needle marks on Heard's arms. The officer re-entered the room to again speak with Harris, who denied any knowledge that Heard was using drugs. Although he saw no needle marks, the officer suspected that Harris may have been under the influence of a controlled substance because his behavior seemed erratic. The officer had Harris exit the room after he observed the syringes and the small plastic bag that had fallen from Heard. The officer exited the room and informed Harris that he was under arrest for possession of paraphernalia and controlled substances. The officer conducted a search incident to arrest and found methamphetamine on Harris's person.

Harris filed a motion to suppress, arguing that the officer searched the room without a warrant, and that he was arrested without probable cause. The district court denied the motion to suppress, finding that exigent circumstances justified the officer's entry because there was a compelling need to enter the room to check on Heard and that the officer had probable cause to arrest Harris. Harris entered a guilty plea, reserving his right to appeal from the denied motion to suppress. This appeal follows.

2

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

### A.    Exigent Circumstances

Harris argues that no exigent circumstances warranting entry existed because Heard was close to the doorway in plain view of the officer and there were no reports or signs of violence. Harris also disagrees with the district court's finding that Heard was unresponsive. Physical entry into an occupant's hotel room amounts to a search governed by the Fourth Amendment to the United States Constitution. *See Hoffa v. United States*, 385 U.S. 293, 301 (1966) ("A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office."); *State v. Robinson*, 144 Idaho 496, 499, 163 P.3d 1208, 1211 (Ct. App. 2007) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent [an exception to the warrant requirement], that threshold may not reasonably be crossed without a warrant.") (quoting *Payton v. New York*, 445 U.S. 573, 589-90 (1980)). Therefore, officers are generally required to obtain a warrant before entering a house or hotel room. *Payton*, 445 U.S. at 589-90; *Robinson*, 144 Idaho at 499, 163 P.3d at 1211. A warrantless entry is permissible, however, if it was a reasonable response to an exigent circumstance. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978). Exigencies include danger to the police or to other persons inside the dwelling. *Robinson*, 144 Idaho at 499, 163 P.3d at 1211. Thus, "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City, Utah*, 547 U.S. at 403. For this reason, law enforcement officers may enter a home or other private premises without a

3

warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Id.*; *Mincey*, 437 U.S. at 392. The exigent circumstances exception justifies a warrantless search when the facts known to the police at the time of entry, along with reasonable inferences drawn thereupon, demonstrate a compelling need for official action and no time to secure a warrant. *State v. Barrett*, 138 Idaho 290, 293, 62 P.3d 214, 217 (Ct. App. 2003).

In prior cases, we have recognized that unconsciousness or unresponsiveness, along with factors tending to indicate distress, may amount to exigent circumstances. In *State v. Bower*, 135 Idaho 554, 557-59, 21 P.3d 491, 494-96 (Ct. App. 2001), a young child was left without care and her father was found unconscious in a hotel room shower. We had little difficulty concluding that those facts represented exigent circumstances. Likewise, we found exigency in *Barrett*, where a person was first observed on his next-door neighbor's porch, unable to stand or to open the door, and was later found incoherent and curled up in a fetal position. *Barrett*, 138 Idaho at 292, 62 P.3d 216. There, we held that entrance into the person's home was permitted to ascertain the cause of his condition and to ensure that no other residents of the home had been exposed to any hazards. *Id.* at 294, 62 P.3d at 218.

Here, there was a loud, ongoing argument between Harris and Heard. When officers arrived, there was silence and a woman lying on the bed. The officer made contact with Harris. Heard was unresponsive during their conversation, which the officer stated was unusual for this type of encounter. The officer wanted to hear Heard's side of the story,[1] so the officer told Harris to wake her. Harris tried to wake Heard, and the officer described her as semi-responsive and extremely groggy. Heard's response concerned the officer in light of the circumstances. Because the officer was unsure whether Heard was injured or intoxicated, he stepped into the room and directly addressed her, ordering her to get up so he could speak with her. The officer testified that he entered so that he could observe both occupants simultaneously to see if Harris attempted to glare, make threatening mannerisms, or otherwise influence Heard while she spoke with the officer. There was substantial evidence to support the court's finding, based on the facts known to the officer and reasonable inferences therefrom, that there was a compelling need to enter the room to see if Heard was badly hurt or needed assistance.

---

[1]     We note that the officer's need to speak with Heard was not part of the exigency which justified entry. It was simply the reason the officer asked Harris to wake Heard. Thereafter, the officer became aware of Heard's condition.

**B.  Probable Cause**

Harris argues that the methamphetamine discovered on his person during the search incident to arrest should be suppressed because the officer lacked probable cause to believe that he possessed and intended to use the syringes on the dresser.  A peace officer may make a warrantless arrest when a person has committed a public offense in the presence of the peace officer.  I.C. § 19-603(1).  Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty.  *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996).  In analyzing whether probable cause existed, this Court must determine whether the facts available to the officer at the moment of the seizure warranted a person of reasonable caution to believe that the action taken was appropriate.  *Id.*; *State v. Hobson*, 95 Idaho 920, 925, 523 P.2d 523, 528 (1974).  The application of probable cause to arrest must allow room for some mistakes by the arresting officer; however, the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability.  *Klinger v. United States*, 409 F.2d 299, 304 (8th Cir. 1969); *Julian*, 129 Idaho at 137, 922 P.2d at 1063.  The facts making up a probable cause determination are viewed from an objective standpoint.  *Julian*, 129 Idaho at 136-37, 922 P.2d at 1062-63.  In passing on the question of probable cause, the expertise and the experience of the officer must be taken into account.  *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct. App. 1991).

Here, there is substantial evidence to support the district court's finding.  The district court found that the officers observed Harris move the cup, and that such action constituted physical control.  The officer also testified that the two syringes were types of needles that could be used for medical purposes, but are commonly used by people that use injectable drugs.  There were two syringes, and it was not unreasonable for the officer to assume that there was a syringe for each occupant of the room.  The officer's entry into the hotel room, his observations of Harris moving the cup and the syringes in the cup was all legally permissible; as such, there was sufficient information to lead a person of ordinary care or prudence to believe that Harris was guilty of possession of drug paraphernalia with the intent to use.

5

**IV.**

**CONCLUSION**

Based on the foregoing, the district court's judgment of conviction and order denying the motion to suppress are affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.